Gilbert C. DELGADO, Herbert W. Cox, Gilbert G. Ensley, Robert E. Hilderbrand, James Drexler, Jr., John L. Leverette, Fred L. Hicks, Plaintiffs-Appellants,

v.

LOCKHEED–GEORGIA COMPANY, A DIVISION OF LOCKHEED CORPORATION, Defendant-Appellee.

Gilbert C. DELGADO, et al., Plaintiffs-Appellees, Cross-Appellants,

v.

LOCKHEED–GEORGIA COMPANY, A DIVISION OF LOCKHEED CORP., Defendant-Appellant, Cross-Appellee.

Nos. 86–8042, 86–8261.

United States Court of Appeals, Eleventh Circuit.

April 24, 1987.

Rehearing and Rehearing En Banc Denied May 29, 1987.

---

Dana E. McDonald, Atlanta, Ga., for plaintiffs-appellants in 86–8042.

Donna J. Brusoski, E.E.O.C., Washington, D.C., for amicus in 86–8042.

Edmund M. Kneisel, Atlanta, Ga., Robert P. Barton, Marietta, Ga., for defendant-appellee in 86–8042.

Before FAY and JOHNSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HENDERSON, Senior Circuit Judge:

The plaintiffs, in case 86–8042, appeal the grant of a motion for summary judgment favorable to the defendant, Lockheed-Georgia Company (Lockheed), by the United States District Court for the Northern District of Georgia in their action brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* (ADEA). The defendant, in case 86–8261, appeals from the denial of various post-judgment motions for attorneys' fees and costs incurred while defending this action. Finding that material questions of fact remain for resolution as to the pretextual nature of the plaintiffs' dismissal from their employment, we reverse and remand for further proceedings.

FACTS:

Lockheed maintains a large production facility near Marietta, Georgia, where it performs repair, modification and structural enhancement work on Lockheed aircraft. Prior to their termination, the seven plaintiffs, Gilbert C. Delgado, Herbert W. Cox, Gilbert G. Ensley, Robert E. Hildebrand, James Drexler, Jr., John E. Leverette, and Fred L. Hicks were employed as first level supervisors overseeing hourly employees who performed repairs and modifications on C–141 aircraft owned by the United

States Air Force. Their responsibilities included the enforcment of Lockheed's policies for the maintenance of accurate time records.

In 1983, in response to government pressure, Lockheed adopted a firmer stance on time recording. In May of that year, R.B. Ormsby, president of Lockheed, sent a memorandum to all employees warning that falsification or mischarging of time records on government contracts was not only a violation of federal law, but also that "[i]nternally, violations will be dealt with severely and may be sufficient cause for termination, suspension, or at least, Employee Performance Notices."

In January, 1984, the seven plaintiffs as well as Lawrence Dugan and Robert W. Barton[1] worked in Department 27–19. They were in charge of seven separate repair "positions" and worked on three different shifts. Leverette and Hildebrand supervised the day and swing shifts, respectively, repairing aircraft Ship Serial No. 0262. On January 3, 1984, the repair work had been completed on 0262 but, because of the intervention of the year-end holidays, no new aircraft was available to repair. Therefore, Leverette and Hildebrand continued to charge their employees' time to an "over and above"[2] corner fitting repair job in 0262 which had been completed well under budget. The other five plaintiffs and Dugan also instructed their hourly employees, working on other aircraft, to charge part of their time to the over and above job on 0262.

Alerted by the large number of hours allocated to this project, Lockheed officials began investigating the time charges. The Division Manager, J.R. Brown, and the Manager of Professional Personnel, C.V. Wright, interviewed all those involved on January 18–19, 1984. Although Dugan and all of the plaintiffs except Leverette admitted falsifying time records, Delgado and Dugan informed the interviewers that the mischarges were in accordance with the instructions of the assistant manager, Bobby Holmes. Several of the plaintiffs, however, expressly denied receiving instructions from Holmes while others were never asked and did not volunteer such information. When questioned, Holmes denied issuing orders to mischarge time. Delgado called the company investigators, leaving messages that he had a witness to verify Holmes' instructions. Wright decided not to investigate further since he was convinced that had Holmes been involved, more of the plaintiffs would have implicated him. Therefore, Lockheed terminated the eight supervisors.

Following unsuccessful appeals to the company, all of the supervisors filed claims for unemployment benefits with the Georgia Employment Security Agency (GESA). Hildebrand, Hicks, Cox and Delgado were denied benefits for intentional misconduct involving falsification of employer's records. They did not appeal the disqualification rulings. Drexler and Ensley appealed the initial rulings on their claims but, following an evidentiary hearing, the state agency affirmed the denial of benefits. Although Leverette initially received a favorable determination from the Georgia Employment Security Agency, Lockheed ap-

---

**1.** Lawrence Dugan was fired along with the seven plaintiffs but did not join in this action because he was under the age of 40 at the time of his termination. Robert W. Barton was never accused of participation in the time mischarging conspiracy.

**2.** Lockheed's contract with the Department of Defense provided for two different types of work on the aircraft, "basic" repairs and "over and above" repairs. "Basic" work involved only standard repair and refurbishment necessary for every aircraft and was negotiated at a fixed price. "Over and above" repairs involved remedying specific problems discovered in each aircraft as the basic modifications were per-

formed. Since the price of each type of "over and above" repair was negotiated periodically based on the average number of manhours each required, it was necessary for the hourly employees to keep accurate time records distinguishing basic and over and above repairs. Department 27–19 had an incentive to use the extra hours on the over and above repair on 0262 so that future negotiations would not rely on the actual and lower amount of hours spent on that repair to reduce the number of hours allotted for that particular job. Such a result would make the Department's task of meeting the budget on each aircraft more difficult in the future.

pealed this decision, and after an evidentiary hearing, the hearing examiner disqualified Leverette from unemployment compensation.

The seven plaintiffs then filed this suit in the district court claiming that their terminations violated the ADEA because they had merely followed the instructions of their superiors in mischarging time, a common practice at Lockheed, and that younger supervisors guilty of the same offense had not been terminated. Following extensive discovery, Lockheed moved for summary judgment claiming that there was no real dispute that the plaintiffs had been fired for violating company policy, as had been established by the Georgia Employment Security Agency. The district court granted Lockheed's motion, concluding that even if the plaintiffs had established a prima facie case of age discrimination, they raised no genuine dispute that Lockheed's stated reason for their dismissal was pretextual.

STANDARD OF REVIEW:

Summary judgment is proper only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). In reviewing the grant of a summary judgment motion, we must view the evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983).

■ As a general rule, summary judgment is not a proper vehicle for resolving claims of employment discrimination which often turn on an employer's motivation and intent. *See Hayden v. First Nat. Bank of Mt. Pleasant*, 595 F.2d 994, 997 (5th Cir. 1979). ("When dealing with employment discrimination cases, ... granting of summary judgment is especially questionable.") In the absence of direct evidence of discrimination, motivation and intent must often be proven through the use of circumstantial evidence which may necessitate the resolution of conflicting inferences, a task peculiarly within the province of the jury.

The standards governing the determination of an age discrimination case are clear-ly set forth in *Anderson v. Savage Laboratories, Inc.*, 675 F.2d 1221 (11th Cir.1982). A plaintiff must first establish a prima facie case by demonstrating "facts sufficient for a reasonable jury to infer that discrimination has occurred." *Id.* at 1224. This inference may be demonstrated by proof that the plaintiff 1) belongs to the statutorily protected age group, 2) was qualified for the job, 3) was discharged and 4) was replaced by a person outside the protected group. *Id.; McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once a prima facie case has been proved, the employer has the burden of producing evidence tending to show that the employee's discharge was for a legitimate, nondiscriminatory reason, such as good cause. In that event, the burden shifts back to the employee to prove by a preponderance of the evidence that age discrimination was a reason for his discharge. He may do this "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207, 217 (1981); *Horn v. Bibb County Commission*, 713 F.2d 689, 691 (11th Cir.1983).

The *Anderson* court recognized that where the employer justifies the discharge by relying on a work rule violation, the plaintiff may prove pretext by showing "either that he did not violate the work rule or that, if he did, other employees not within the protected class who engaged in similar acts were not similarly treated." *Anderson*, 675 F.2d at 1224.

■ In this appeal, the plaintiffs claim that there are material issues of fact as to whether Lockheed's stated reason for their dismissal is worthy of credence. The plaintiffs assert that conflicting evidence is presented as to whether they violated Lockheed's actual work rule and whether other supervisors, under the age of forty, received more lenient treatment for like offenses. Viewing the evidence in the light

most favorable to the plaintiffs, we agree and reverse the grant of summary judgment.

## WORK RULE:

### A. *Question of Fact.*

The district court found that Ormsby's letter issued in May, 1983 was a watershed event in Lockheed's history which established once and for all that timecard falsification, although rampant in the past, would no longer be tolerated. Lockheed argues that in light of this strongly worded directive and the admitted tightening of company policy on time keeping, the plaintiffs' claim that they merely followed orders is disingenuous and does not raise a material issue of fact. While we tend to agree that a company should be entitled to require that its supervisory employees at least question orders in direct contravention of stated policy, the plaintiffs have presented evidence that Lockheed's work rule would have excused the plaintiffs' misconduct if committed under direct orders from a superior. J.R. Brown, the plaintiffs' Division Manager and one of the key figures in Lockheed's investigation of the 0262 mischarges, testified that if the supervisors charged the time according to Holmes' orders, they would not have been terminated. Brown went on to state, "If they were following instructions, it would have been the responsibility of the guy that gave them the instructions to answer for it...."[3] Therefore, if the plaintiffs raised

a genuine issue of fact regarding Holmes' participation in their misconduct, it is material to the issue of whether or not the supervisors violated Lockheed's work rule.

The district court concluded that Lockheed had no real evidence that Holmes had ordered the time mischarges at the time of the plaintiffs' termination because only Delgado implicated Holmes during the initial investigation. In view of Holmes' flat denial of any such orders and the lack of corroboration from the other supervisors, the district court found the issue of Holmes' participation irrelevant since Lockheed had no reason to believe that such orders were given when the plaintiffs were fired. *See Treadwell v. Alexander,* 707 F.2d 473 (11th Cir.1983) (whether employer's decision was discriminatory is based upon information available at time, not later events).

A review of the record reveals that not only Delgado but also Dugan informed the Lockheed investigators that Holmes had issued the instruction to charge their time to 0262. Furthermore, Delgado later called Wright and left a message that he had a witness to Holmes' instruction.[4] Wright ignored this information. Although the investigators allegedly discounted the claims that Holmes engineered the time fraud, Wright continued to investigate Holmes' involvement even after the plaintiffs' termination.[5] Thus, there is an issue of fact as to whether Lockheed had sufficient reason to believe that the plaintiffs acted un-

---

**3.** Brown Dep. p. 22. Later in the same deposition, Brown contradicted himself and stated that whether or not the plaintiffs followed Holmes' instructions in mischarging time it would have no effect on the discipline imposed on them. Brown Dep. p. 74. Despite this contradiction, Brown's original testimony creates an issue of fact as to Lockheed's work rule in this situation.

**4.** Dugan told Wright and Brown during his initial interview:

I asked Holmes, night manager, (after I had talked with Enslay and Delgado) if he wanted me to charge to Ship 262. Holmes responded, 'I can't tell you to charge down there, but....' It was set up for the employees to start out showing the labor distribution entry for their normal work assignment, and after one-half hour or one hour to change the charge to Ship

Serial 262.... This was told to me by Delgado, Ensley and Holmes.

Delgado's lead man, J.C. Moody, allegedly overheard part of a conversation between Holmes and Delgado concerning use of the extra time on 0262.

**5.** Wright interviewed Holmes on three separate occasions. The investigators interviewed each of the plaintiffs only once before their discharge for less than half an hour. At least one of the plaintiffs, Robert Hildebrand, later testified that Holmes told him right before his interview not to inform on him and that he would come forward if the situation became serious. Hildebrand testified that not realizing the gravity of the situation and afraid of alienating his superior, he did not implicate Holmes. (Hildebrand Dep. pp. 120–22.)

der orders from their superior. Because of these material factual disputes, it is for the jury to determine whether the plaintiffs' conduct violated the work rule.

B. *Issue Preclusion:*

■ Following their terminations, the plaintiffs filed claims for unemployment compensation with the Georgia Employment Security Agency (GESA). Lockheed maintains that the judicially unreviewed decisions of the state agency finding that the plaintiffs were discharged for violating Lockheed policies bars relitigation of this issue under the doctrine of administrative res judicata.

The Equal Employment Opportunity Commission (EEOC) urges, as amicus curiae, that we apply the rationale of the Supreme Court in *University of Tennessee v. Elliott,* —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) to hold that unreviewed findings of state administrative agencies never have preclusive effect in subsequent ADEA actions in federal court. In *Elliott,* the Supreme Court noted that 28 U.S.C. § 1738,[6] which provides that the judgments and records of state courts shall have the same force and effect in federal court as in the state where rendered, is not applicable to judicially unreviewed state administrative factfinding. *Id.* at ——, 106 S.Ct. at 3224, 92 L.Ed.2d at 643. Nevertheless, the Court has frequently fashioned federal common law rules of preclusion where § 1738 does not apply. In the context of administrative factfinding, the Court has upheld issue preclusion in subsequent lawsuits where the administrative agency acted in a judicial capacity in resolving disputed issues of fact properly before it which the parties have had an adequate

opportunity to litigate. *Id.* at ——, 106 S.Ct. at 3226, 92 L.Ed.2d at 645–46, quoting *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

The Supreme Court in *Elliott* deemed it unnecessary to apply these general rules to the question of issue preclusion as to the plaintiff's Title VII claims, however, because the plain meaning of the statute, as reinforced by the legislative history and prior Supreme Court authority led to the unequivocal conclusion that a federal common law rule of preclusion would be inconsistent with Congress' intent in enacting Title VII. *Elliott,* —— U.S. at ——, 106 S.Ct. at 3225, 92 L.Ed.2d at 644–45. Since the ADEA and Title VII share a common purpose in eliminating discrimination in the workplace, *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), the EEOC contends that the deferral provisions of the two statutes should be interpreted similarly and preclusion be denied. This argument is persuasive since to the extent that there are differences in the deferral mechanisms of the statutes, those variations suggest that the ADEA requires less deference to state administrative agencies.[7] *See Martinez v. United Automobile, Aerospace & Agricultural Workers of America,* 772 F.2d 348, 351 (7th Cir. 1985) (ADEA policy of deference to state authority is weaker than in Title VII). Nevertheless, we find it unnecessary to determine whether the findings of a state administrative agency should be denied preclusive effect in all cases because the findings at issue here are not the result of proceedings before a state agency charged with the enforcement of state age discrimination laws.[8] Rather, the only state agen-

6. Title 28 U.S.C. § 1738 provides in pertinent part:

> The records and judicial proceedings of any court of any ... state ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such state ... from which they are taken.

7. Under Title VII, persons aggrieved must file with a state antidiscrimination agency before filing with the EEOC. 42 U.S.C. § 2000e–5(c). Under the ADEA, however, grievants may file

with state and federal agencies simultaneously. *See* 29 U.S.C. §§ 626(d) and 633(b). Furthermore, § 14(a) of the ADEA, 29 U.S.C. § 633(a), for which Title VII has no counterpart, provides that upon the commencement of an action under the ADEA, all state proceedings are superseded.

8. Section 14(b) of the ADEA, 29 U.S.C. § 633(b) states:

> Limitation of Federal action upon commencement of State proceedings

cy to have addressed the plaintiffs' claims is the Georgia Employment Security Agency which determines eligibility for unemployment compensation. Because of the narrow focus of this agency investigation, we hold that issue preclusion does not apply because the plaintiffs did not have an adequate opportunity to litigate their age discrimination claims. *See Hill v. Coca Cola Bottling Co. of New York,* 786 F.2d 550 (2d Cir.1986).

Since four of the plaintiffs never received a hearing before the state agency, it is clear that the administrative decision that they were fired for violating Lockheed's policy has no res judicata effect. *See City of Pompano Beach v. FAA,* 774 F.2d 1529, 1538 n. 10 (11th Cir.1985) (parties did not have full opportunity to litigate where agency proceedings did not allow presentation of witnesses and opportunity to cross-examine).

Drexler, Leverette and Ensley did receive an evidentiary hearing where the hearing officer determined that the plaintiffs were discharged for falsification of their employer's records. The record does not reveal, however, whether or not the hearing officer made any determination as to Holmes' participation in the time charging conspiracy or the effect of this factor on Lockheed's disciplinary policy. Nor is there any indication that the plaintiffs were allowed to present evidence of the disparate treatment of younger employees guilty of the same offense.

The Georgia Employment Security Agency is designed to speedily afford benefits to persons out of work through no fault of their own. Granting deference to unreviewed decisions of this agency in subsequent ADEA lawsuits could cause potential plaintiffs to forego their chance at unemployment compensation for fear of jeopardizing their ADEA claims or else force employees and employers to litigate unemployment compensation claims as discrimination suits. Such a result would work a hardship, not only on the parties, but on other unemployed persons awaiting determination of their claims. Accordingly, we decline to grant preclusive effect to the unreviewed state agency determinations. *Accord, Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279 (9th Cir.1986).

DISPARATE TREATMENT:

The evidence before the district court also created a material issue of fact as to whether Lockheed treated a younger supervisor [9] who committed similar offenses in a more lenient manner. A short time after the plaintiffs' termination, supervisor B.K. Mason, III, age 36, was accused of intentionally charging 181.5 hours of crew time to the wrong aircraft. After an investigation, Lockheed suspended Mason for five days for failure to follow proper procedures both for disposing of a botched aircraft part and "recording labor distribution." The district court found that the lesser discipline imposed did not constitute pretext because Mason admitted only that "he had filled in some contract data on some time cards" but denied entering any of his crew's work hours on the cards. As a result of this statement, the district court

In the case of an alleged unlawful practice occurring in a State which has law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier. terminated.

Georgia has not established a state authority "to grant or seek relief from such discriminatory practice."

9. The plaintiffs also argue that the suspension of supervisor Wayne LaFerry for time indiscrepancies constituted disparate treatment indicative

of pretext. The district court found, however, that LaFerry simply charged time to one "over and above" repair item when the time should have been charged to the "basic" work order on the same aircraft. There was no evidence that Lockheed had reason to believe this action was not an honest mistake. Therefore, there is no material controversy as to whether the disciplinary action in this instance constituted disparate treatment. *See Krieg v. Paul Revere Life Ins. Co.,* 718 F.2d 998 (11th Cir.1983) *cert. denied,* 466 U.S. 929, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984) (affirming JNOV for defendant since there was qualitative difference between younger employee's letter writing to superior and plaintiff's disparaging remarks about company).

determined that Mason's offense did not reach the magnitude of the plaintiffs' violation and, consequently, there was no dissimilar treatment. The "contract data" admittedly filled in by Mason apparently included the aircraft serial number. If in fact Mason did record the incorrect aircraft number, he was guilty of the same offense which Lockheed contends caused the plaintiffs' termination.

Lockheed had substantial evidence that Mason was mischarging time. An hourly employee in the shift following Mason's told Lockheed officials that he had seen Mason's crew working on one aircraft while their timecards charged their hours to another. The employee's supervisor, Ivan O'Neal, confirmed this story. Although the district court found that none of Mason's own crew accused him of wrongdoing, one of Mason's hourly employees, McTyre, reported to Lockheed officials that his timecard showed him working on the wrong aircraft. Lockheed argues that, unlike the plaintiffs, Mason never admitted to time mischarges and therefore the company hesitated to fire him without conclusive evidence of guilt. This deference to Mason's credibility seems odd, however, since Lockheed determined during a simultaneous investigation that Mason had not been completely honest when questioned about the pilfering of an airplane part to cover a mistake made by his crew.[10] After the plaintiffs filed this lawsuit, Lockheed finally terminated Mason when the leadman on his crew implicated Mason in time mischarges. In light of all the evidence against Mason at the time of the original investigation, we find that there is a material issue of fact as to whether it was Mason's age or Lockheed's perceived difference in the nature of his offense that explains the original disparity in discipline.

CONCLUSION:

By remanding this case for a trial on the merits, we do not intimate or suggest the resolution of the ultimate issue in this case, i.e., whether the plaintiffs have established by a preponderance of the evidence that Lockheed intentionally discriminated against them because of age. *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 253, 1010 S.Ct. at 1092, 67 L.Ed.2d at 215. Nor do we in any way condone the admittedly fraudulent conduct of the plaintiffs. We hold merely that viewing the evidence in the light most favorable to the plaintiffs, there are material issues of fact as to whether Lockheed's stated reason for the supervisors' dismissal was pretextual. Also left for determination is the issue of whether the plaintiffs established a prima facie case since that fact was assumed by the district court for purposes of the motion for summary judgment *See Pace v. Southern Railway System*, 701 F.2d 1383, 1390 (11th Cir.1983), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983) (failure to establish prima facie case of age discrimination warrants summary judgment).

Because of our disposition of the appeal in case 86–8042 on the merits, Lockheed's appeal in case 86–8261 from the district court's denial of the motions for attorneys' fees and costs is dismissed as moot.

REVERSED and REMANDED.

---

10. Wright Dep. pp. 143–44, 152–53.