Martin GUTIERREZ, Plaintiff,

v.

**BOARD OF COUNTY COMMISSION-ERS, SHAWNEE COUNTY, KANSAS; Thomas R. Merkel; Earl Hindman; Individually and in their Official Capacities as Agents and Employees of Defendant Board of County Commissioners, Shawnee County, Kansas, Defendants.**

No. 90–4088–R.

United States District Court,
D. Kansas.

April 27, 1992.

Pantaleon Florez, Jr., Topeka, Kan., for plaintiff.

Douglas F. Martin, Porter, Fairchild, Wachter & Haney, James S. Pigg, Fisher, Patterson, Sayler & Smith, Jerold E. Berger, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an employment discrimination action brought by the plaintiff, a United States citizen of Mexican ancestry, pursuant to 42 U.S.C. §§ 1981, 1983 and 2000e *et seq.* (Title VII). Plaintiff has also brought a pendent claim based on the Kansas Act Against Discrimination (KAAD), K.S.A. 44–1001 *et seq.* Plaintiff contends that he was terminated from his position as a correctional specialist for the Shawnee County Jail because of his national origin and in retaliation for the exercise of his First Amendment right to free speech. Plaintiff also claims that he was denied certain job assignments because of his national origin.[1] Plaintiff has named as defendants: Board of County Commissioners of Shawnee County, Kansas (Board); Earl Hindman, Director of Shawnee County Department of Corrections (SCDOC); and Thomas R. Merkel, Deputy Director of SCDOC. This matter is before the court upon the Board's motions to dismiss and for summary judgment and the individual defendants' motion for summary judgment.

■ The court shall first turn to the defendants' motions for summary judgment. In considering a defendant's motion for summary judgment, the court must examine all the evidence in the light most favorable to the plaintiff. *Barber v. General Electric Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the non-

moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552.

■ Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings ..." to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872)).

Many of the facts relevant to the pending motions are not in dispute. Plaintiff was employed by the SCDOC as a Correctional Specialist I from July 6, 1987 to April 6, 1989. On June 22, 1988, plaintiff received an oral reprimand for exchanging words with an inmate while plaintiff was assigned to the book-in area. Plaintiff was removed from this assignment as a result of this incident.

In August 1988, someone called the local newspaper and reported that a bug had been found in inmate food. Plaintiff was called into defendant Merkel's office. Gary Bain and Bob Zwiesler were also present. Plaintiff was asked by Bain why he had called the newspaper. Plaintiff told them that he did not know what they were

---

1. Plaintiff has indicated that he is asserting the following claims in this action: (1) discriminatory discharge and job assignments under §§ 1981 and 1983; (2) discriminatory discharge under Title VII; and (3) First Amendment retal-

iation claim based upon § 1983. He is not asserting any other claims. To the extent that the defendants have raised arguments concerning other claims in their motions, the court shall ignore them.

talking about. Bain then left the room. Merkel told plaintiff that someone had called the newspaper about the food and asked plaintiff why he did not follow the chain of command if he had a problem. Plaintiff told Merkel that he had been on vacation and that if he had called the paper, he would be smart enough to have called from outside the jail because he knew that telephone calls could be monitored within the jail. He was then allowed to return to his duty post. Later, in a conversation with Zwiesler, plaintiff was told that management knew that another individual had made the telephone call and nothing was going to be done about it. Plaintiff later learned that management had run a data sheet of the telephone calls and found that a telephone call to the newspaper had been made from plaintiff's duty station at 8:00 a.m., but that another employee had made the call while plaintiff was on break. Plaintiff received no reprimand or adverse job action as a result of the inquiry regarding the telephone call to the newspaper.

On March 29, 1989, plaintiff was working in the special housing module. An inmate, Richard Harrison, had been yelling at the guards and banging on the door of the cell with his hands and feet. At approximately 7:30 a.m., a decision was made to put Harrison in restraints because he was disrupting the module. There is some dispute as to whether plaintiff and another correctional specialist, Mack Beatty, made this decision jointly or whether Beatty, who is Caucasian, made the decision. They were equal in authority with neither individual acting as a supervisor. In any event, Harrison was placed in the restraints by plaintiff and Beatty. Harrison was placed in a "rocking-horse" position with his hands cuffed behind him and leg irons pulled through his handcuffs so that his legs were bent and he was in a "rocking chair" position on his stomach. After being placed in restraints, Harrison calmed down but continued to yell for several hours. Prior to the end of their shift, plaintiff and Beatty removed the restraints. The restraints were removed because Harrison had calmed down. After the restraints were removed, Harrison stood up without assistance. At that point, plaintiff decided to grab Harrison's jump suit to "get his attention." Harrison was standing about a foot from the wall of his cell at the time plaintiff grabbed him. During the incident, Harrison's back contacted the wall in the cell. Plaintiff swung Harrison, and the buttons on the jump suit broke loose, causing Harrison to fall to a squatting position. Throughout the incident, Harrison never said anything to plaintiff, stepped toward him, or tried to hit him. Beatty had no physical contact with Harrison during the incident. Jail regulations require that incident reports be made whenever restraints are used on an inmate. Neither plaintiff nor Beatty prepared the required incident report concerning the use of restraints on Harrison. Following an investigation, plaintiff was terminated effective April 6, 1989, and Beatty was placed on leave without pay for ten days. Merkel made the recommendation to terminate plaintiff, and Hindman made the final decision.

Plaintiff filed for unemployment compensation benefits. Following a hearing in which plaintiff and his attorney were present, the referee issued a decision denying plaintiff's claim and finding that plaintiff had engaged in misconduct connected with his work which was a willful or intentional disregard or violation of the reasonable rules, policies or standards of behavior of his employer. Plaintiff appealed this decision. The decision was affirmed on appeal by the Employment Security Board of Review.

The arguments raised by the defendants are similar. The court shall consider them as applicable to all defendants. First, the defendants contend that the decision in plaintiff's unemployment compensation case precludes plaintiff's claims under 42 U.S.C. §§ 1981 and 1983. The defendants argue that the principles of res judicata and collateral estoppel preclude these claims.

The United States Supreme Court has adopted different rules concerning the preclusive effect of the factfinding decisions of state administrative agencies on

subsequent federal claims. In Title VII actions, federal courts are not allowed to give preclusive effect to judicially unreviewed findings of a state agency. *University of Tennessee v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986). However, in cases brought under the Reconstruction civil rights statutes, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts if the agency acted in a judicial capacity, resolved questions of fact properly before it, and granted the parties an adequate opportunity to fairly litigate their claims. *Id.* at 799, 106 S.Ct. at 3226.

■■■ This court, then, must determine what preclusive effect the findings of fact made in a Kansas unemployment compensation hearing would be entitled to in the Kansas courts. The Kansas Supreme Court has concluded that the "doctrine of res judicata is applicable to administrative agency decisions when the agency is acting in a judicial capacity." *Neunzig v. Seaman U.S.D. No. 345*, 239 Kan. 654, 722 P.2d 569, 573 (1986). However, res judicata only applies when the administrative proceedings provide procedural protections similar to court proceedings. *Id.* 722 P.2d at 574. If those hurdles are passed, then res judicata or claim preclusion may be invoked when the following is shown: (1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity in the quality of the persons for or against whom the claim is made. *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 751 P.2d 122, 128 (1988). Collateral estoppel or issue preclusion may be invoked where the following is shown: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and the judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment. *Id.*

■■■ For a variety of reasons, we do not believe that the Kansas courts would find that an unemployment compensation referee's factual determinations are entitled to res judicata or collateral estoppel effect. First, we find that an unemployment benefits hearing differs from a judicial proceeding in many respects. The public purpose of employment security laws is to lighten the burden of involuntary unemployment. K.S.A. 44–702. A employee discharged from employment in Kansas is entitled to unemployment benefits unless the employer proves by a preponderance of the evidence that the employee is disqualified from benefits. K.S.A. 44–706(b). The issues to be determined in an unemployment compensation benefits hearing are much different than the issues to be determined here. An unemployment compensation benefits referee is concerned with forbidden conduct by the employee, while this court in this case is concerned with forbidden conduct by the employer. We recognize that in many cases these issues may overlap, but we are unwilling to conclude that res judicata or collateral estoppel should be applied in such circumstances. As stated by the court in *Nickens v. W.W. Grainger, Inc.*, 645 F.Supp. 569, 571 (W.D.Mo.1986), in considering whether preclusive effect should be given to a Missouri unemployment compensation decision in a subsequent action under 42 U.S.C. § 1981:

> [I]t would be unfair to estop an employer from defending a federal discrimination suit, in which its potential liability far exceeds that imposed in state administrative unemployment proceedings. By the same token, an employee should not be estopped from maintaining a subsequent Section 1981 action in the event the commission should deny unemployment compensation on the ground of "misconduct" under the facts of a particular case. In either instance, the parties lack the incentive to litigate in the unemployment compensation hearing the issues that are subject to litigation in a subsequent Section 1981 action. Application of collateral estoppel in such a context would violate the ultimate consideration of fairness, on which its use must be based.

Moreover, the procedures utilized in unemployment benefits proceedings are not similar to court hearings. The proceedings are conducted informally. K.A.R. 48–1–4(a). The rules of evidence are not followed. *Id.* The parties are not required to be present. K.S.A. 44–709a. In sum, we do not believe that the Kansas courts would allow the application of res judicata or collateral estoppel principles to findings made by the referee in a Kansas unemployment compensation hearing.

Other federal courts have reached a similar conclusion in determining whether an unemployment agency's decision was entitled to preclusive effect in a subsequent federal civil rights action. *See Kelley v. TYK Refractories Co.,* 860 F.2d 1188 (3d Cir.1988); *Delgado v. Lockheed–Georgia Co.,* 815 F.2d 641 (11th Cir.1987); *Hill v. Coca Cola Bottling Co. of New York,* 786 F.2d 550 (2d Cir.1986); *Johnson v. University of Wisconsin–Milwaukee,* 783 F.2d 59 (7th Cir.1986); *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985); *Gallo v. John Powell Chevrolet, Inc.,* 765 F.Supp. 198 (M.D.Pa.1991); *Nickens v. W.W. Grainger, Inc., supra.*

The defendants next contend that they are entitled to summary judgment on plaintiff's discriminatory discharge claims because the record fails to contain sufficient evidence of pretext by the defendants. As evidence of pretext, plaintiff points to the following evidence: (1) Officer Beatty also physically abused inmate Harrison during the incident of March 29, 1989; (2) it was common practice for correctional officers to use excessive force in dealing with inmates at the jail; and (3) several incidents where correctional officers used force against inmates and were not terminated.

■ In analyzing employment discrimination cases, the Supreme Court has encouraged the lower courts to use the three-step process first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and later refined in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, the plaintiff must establish a *prima facie* case

of discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Once a *prima facie* case of discrimination has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the actions taken. *Id.* at 254–55, 101 S.Ct. at 1094. If the employer is able to do so, then the burden shifts to the employee to prove by a preponderance of the evidence that the legitimate justification offered by the employer is merely a pretext for discrimination. *Id.* at 256, 101 S.Ct. at 1095. A plaintiff may prove pretext by showing that the employer was motivated by a discriminatory reason or that the employer's explanation was not credible. *Id.*

■ The record before the court shows that plaintiff has made out a prima facie case of discrimination. He has demonstrated that he is a member of a protected class, was qualified to be a correctional specialist, and an adverse job decision was taken against him by defendants. The record also reveals that defendants have articulated a legitimate, nondiscriminatory reason for plaintiff's termination. They have indicated that plaintiff was terminated because plaintiff violated jail policies concerning the use of restraints and use of unnecessary force on inmates. Plaintiff has conceded in his deposition that his termination was proper. Nevertheless, plaintiff has suggested that the reason offered by the defendants for termination is pretextual because the white employee who participated with the plaintiff in the restraint of inmate Harrison was not terminated.

The court must carefully examine the evidence that plaintiff contends constitutes pretext. First, we must consider the allegation by plaintiff that Officer Beatty also physically abused inmate Harrison during the incident. This allegation arises from Officer Beatty's statement that he did lift Harrison by the restraints to "vent some anger and frustration." By itself, this evidence might indicate that Officer Beatty engaged in conduct similar to the plaintiff. However, the evidence in the case suggests that plaintiff also engaged in such conduct.

Plaintiff admits in his deposition that he also lifted inmate Harrison by the restraints during the incident. Accordingly, we are unable to conclude that this evidence sufficiently demonstrates pretext by the defendant.

Plaintiff has also indicated that it was common practice around the jail to use excessive force against inmates and that officers who used such force were not terminated. However, as support for this contention, plaintiff is able to point to only five examples. Again, a review of the incidents fails to suggest an inference of pretext by the defendants. There is no evidence before the court that two of these incidents were ever made known to supervisory personnel at the jail. Of the other three incidents, plaintiff has failed to offer sufficient evidence that the actions of the correctional officers constituted unnecessary or punitive force by the officers. The record presently before the court indicates that the force used in each of these episodes was reasonable and justified.

■ Finally, we note that plaintiff has pointed to some racial slurs that were directed at him by correctional supervisors at the jail during his employment. These slurs were allegedly made by Kent Bell and Russ Green. While we certainly do not condone such language, we must note that the decision to terminate plaintiff was made by defendants Merkel and Hindman. Plaintiff has specifically indicated in his deposition that neither of these individuals used any racial slurs around him. Accordingly, we do not find that this evidence sufficiently demonstrates pretext.

■ Having carefully reviewed the record in this case, we must conclude that the defendants are entitled to summary judgment on this claim. We find insufficient evidence of pretext in the record. The undisputed facts before the court show that plaintiff and the other employee were not equally involved in their conduct toward inmate Harrison. Both employees did violate jail policy in their actions concerning the restraint of Harrison. However, plaintiff alone violated the policy against the unnecessary use of force by a physical assault of the inmate after he was released from restraints. This additional transgression by plaintiff distinguished his conduct from that of the other employee. In addition, plaintiff had had a previous disciplinary complaint while the other employee had no prior disciplinary complaints. Accordingly, we find no evidence of pretext in the defendants' failure to also terminate the other employee because the two employees were not similarly situated. *See, e.g., Trujillo v. Grand Junction Regional Center*, 928 F.2d 973, 977 (10th Cir.1991). Moreover, we find no evidence of pretext in the other incidents noted by the plaintiff. There is insufficient evidence of any of these incidents to suggest that other employees of the jail violated the policy against unnecessary use of force against inmates. In reviewing the evidence on a summary judgment motion, the court is "not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir.1988). Here, the evidence is simply insufficient to avoid summary judgment. Plaintiff has failed to show that the defendants, more likely than not, were motivated by a discriminatory reason or that their explanation was not credible.

■ The defendants next contend that plaintiff's claims of discriminatory discharge and job assignment are not actionable under § 1981. We agree. *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Trujillo*, 928 F.2d at 975. Plaintiff has described his claim of discriminatory job assignments as failures to promote. However, the undisputed evidence before the court demonstrates that these assignments were not "promotions" because they involved no change in salary or creation of supervisory responsibility. These positions did not rise "to the level of an opportunity for a new and distinct relation between the employee and the employer." *Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377.

■ Finally, the defendants contend that they are entitled to summary judgment on plaintiff's claim of retaliation

based upon the exercise of his First Amendment rights. Defendants argue that there is insufficient evidence of retaliation to avoid summary judgment.

In *Koch v. City of Hutchinson,* 847 F.2d 1436, 1440 n. 11 (10th Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988), the Tenth Circuit succinctly set forth the framework for analyzing a claim by a public employee that his governmental employer made an adverse employment decision in violation of the employee's First Amendment rights as follows:

> The complete inquiry into whether a state employer's personnel decision has improperly infringed upon an employee's First Amendment rights involves several steps. First, the employee must show that his speech was constitutionally protected (the *Connick–Pickering* test, a question of law); next, the employee must prove that his protected speech "was a 'motivating factor' in the detrimental employment decision. The employer 'then bears the burden of showing by a preponderance of the evidence that it would have reached the same decision ... in the absence of the protected activity.' " *Saye v. St. Vrain Valley School Dist. RE–1J,* 785 F.2d 862, 866 (10th Cir. 1986) (quoting *Childers v. Independent School Dist.,* 676 F.2d 1338, 1341 (10th Cir.1982)).

The evidence here is insufficient to suggest that plaintiff's speech was a motivating factor in the defendants' decision to terminate him. The termination occurred seven months after the "bug in the food" incident. Plaintiff was fired after an incident in which he admittedly used unnecessary force on an inmate. In his deposition, plaintiff acknowledged that he should have been terminated for the incident with inmate Harrison. Plaintiff has not produced any evidence suggesting that his termination was related to the "bug in the food" incident. Accordingly, we do not find sufficient evidence on this claim to avoid summary judgment.

With the granting of summary judgment to the defendants on plaintiff's federal claims, the court shall dismiss plaintiff's pendent state claim based on the KAAD. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). With this dismissal, the court shall deny defendant Board's motion to dismiss as moot.

IT IS THEREFORE ORDERED that defendant Board's motion to dismiss (Doc. # 28) be hereby denied as moot.

IT IS FURTHER ORDERED that defendants' motions for summary judgment (Doc. ## 52 and 54) be hereby granted. Judgment shall be entered for the defendants and against the plaintiff on plaintiff's claims based on 42 U.S.C. §§ 1981, 1983 and 2000e et seq.

IT IS FURTHER ORDERED that plaintiff's claims based on the Kansas Act Against Discrimination be hereby dismissed without prejudice.

IT IS SO ORDERED.