Phillip A. CHILDRESS, Plaintiff,

v.

Mary CLEMENT, David Geary, and Virginia Commonwealth University, Defendants.

Civil Action No. 3:98CV51.

United States District Court, E.D. Virginia, Richmond Division.

May 14, 1998.

**386**

Thomas E. Lacheney, Deal & Lacheney, Richmond, VA, Anthony Sylvester, Hopewell, VA, for Plaintiff.

Pamela Finley Boston, Special Assistant Attorney General, Virginia Commonwealth University, Office of the General Counsel, Richmond, VA, David Lee Ross, Virginia Commonwealth University, Richmond, VA, Edward Meade Macon, Assistant Attorney General, Richmond, VA, for Defendants.

### MEMORANDUM

MERHIGE, District Judge.

This matter comes before the Court on the Motion For Summary Judgment by Defendants Mary Clement, David Geary, and Virginia Commonwealth University ("VCU"). For the reasons which follow, Defendants' motion will be GRANTED.

### BACKGROUND

The dispositive facts are essentially undisputed. Plaintiff Phillip Childress was a graduate student in VCU's Department of Criminal Justice in April, 1997 when he was charged with cheating and plagiarism by Dr. Clement and Dr. Geary, both of whom were professors in the Department of Criminal Justice at VCU. Dr. Clement was also the Honor System Coordinator for the College of Humanities and Sciences. Dr. Geary suspected that Plaintiff had cheated and charged him with violating the VCU Honor Code in April of 1997, after being advised by Professor Hague, another professor in the VCU Department of Criminal Justice that Plaintiff had previously submitted to him a research paper on juvenile justice reform that was substantially similar, if not identical, to the paper which Plaintiff submitted to Dr. Geary in the fall of 1996. Plaintiff argued before the VCU Academic Campus Honor Council ("Honor Council") that Dr. Geary had given him permission to submit the juvenile justice reform paper in her course, knowing that it was the same, or substantially similar, to the paper previously submitted in Dr. Hague's course. For this violation of the VCU Honor Code, Plaintiff was charged with one count of cheating.

Dr. Clement also suspected Plaintiff of plagiarizing portions of a comprehensive exam which she graded in about December 1996 and warned him at that time that plagiarism was a violation of the VCU Honor Code. No charges were brought against Plaintiff for this alleged violation of the Honor Code.

Dr. Clement later reviewed the criminal justice reform research paper which had been submitted to both Dr. Geary and Dr. Hague. Dr. Clement concluded that in addition to being improperly submitted for credit in two different courses, the paper also violated the Honor Code's prohibition against plagiarism because material contained in the paper was not properly cited and was represented as Plaintiff's own work. Plaintiff was later charged for this violation of the Honor Code.

Dr. Clement also had occasion to grade a comprehensive exam paper submitted by Plaintiff in another criminal justice course in which she was serving as a grader. Although she did not know at the time she read the paper that it was written by Plaintiff, she believed that the paper contained uncited

published source material. After Dr. Clement discovered that the Plaintiff was the author of the paper, she charged him with plagiarism. In sum, Plaintiff was charged with one count of plagiarizing the comprehensive exam paper graded by Dr. Clement, one count of plagiarizing the juvenile justice reform paper submitted to Dr. Geary, and one count of cheating for submitting the juvenile justice reform paper for credit in more than one course.

In letters dated April 27 and April 28, 1997, Dr. Clement notified Plaintiff of the cheating and plagiarism charges against him. Because Dr. Clement was an accuser, the hearing on the charges against Plaintiff was conducted by the Honor Council to avoid a conflict of interest. The VCU Honor Council consists of four faculty members and three students. By letter dated May 21, 1997, William Duvall, Administrator for the VCU Honor Council, notified Plaintiff that a hearing on charges of three Honor Code violations would be held by the Honor Council on May 30, 1997.

At the May 30, 1997 hearing, the Honor Council heard testimony from the Plaintiff, Drs. Clement and Geary, and others. After the hearing, the Honor Council found Plaintiff guilty of one count of cheating and two counts of plagiarism. Plaintiff appealed the Honor Council's decision to the University Appeal Board ("Appeal Board"), which met on July 2, 1997 to hear the appeal. In his appeal to the Appeal Board, Plaintiff argued that the Honor Council "did not properly interpret [Plaintiff's] disability test scores ... and that the sanction imposed [by the Honor Council was] not proportionate to the conduct...."

The University Appeal Board found that Plaintiff had been warned by the faculty not to commit the honor violations he had been charged with. By unanimous vote, the Appeal Board found Plaintiff's appeal to be without merit and recommended that President Trani sustain the decision of the Honor Council. By letter dated July 10, 1997, President Trani notified Plaintiff that he was accepting the recommendation of the Appeal Board to expel him from the university.

In September, 1997, Plaintiff brought claims in state court against Drs. Clement and Geary alleging that they had slandered him and conspired against him to injure his reputation, trade, business and profession. In January, 1989, Plaintiff filed his Complaint in this Court and one month thereafter voluntarily dismissed his state court lawsuit. Plaintiff's Complaint in this Court states one count against Dr. Clement, one count against both Drs. Clement and Geary, and four counts against VCU, as follows: (I) slander by Clement; (II) tortious interference by Clement and Geary; (III) violation of the Virginia Rights of Persons with Disabilities Act (the "Virginia Act") by VCU; (IV) breach of contract by VCU; (V) violation of the Americans with Disabilities Act ("ADA") by VCU; (VI) violation of the Federal Rehabilitation Act by VCU. On May 4, 1998, Plaintiff moved to voluntarily dismiss without prejudice Counts I, II, and IV of his Complaint, and the Court granted that motion on May 18, 1998. Thus, all claims against Drs. Clement and Geary have been voluntarily dismissed, leaving only the claims against VCU for violations of state and federal statutes protecting individuals with disabilities.

## SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). The burden rests on the movant to show that there is an absence of a genuine issue concerning any material fact and the non-moving party must only show, in order to survive the movant's motion, that there is evidence from which a finder of fact "might return a verdict in his favor." *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

## ANALYSIS

*The Applicable Statute of Limitations*

■] The Virginia Rights of Persons With Disabilities Act contains the following

provisions regarding the statute of limitations:

An action may be commenced pursuant to this Section any time within one year of the occurrence of any violation of rights under this Chapter. However, such action shall be forever barred unless such claimant or his agent, attorney, or representative has commenced such action or has filed by registered mail a written statement of the nature of the claim with the potential defendant or defendants within 180 days of the occurrence of the alleged violation.

Va.Code § 51.5–46(B). The limitations period began to run when Plaintiff received final and definite notice of the allegedly discriminatory decision, *see Delaware State College v. Ricks,* 449 U.S. 250, 255, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *see also English v. Whitfield,* 858 F.2d 957, 961–62 (4th Cir. 1988), which was on July 10, 1997 when President Trani notified Plaintiff of his decision to accept the recommendation of the Appeal Board to expel him. Plaintiff notified Defendant VCU in writing by letter dated July 16, 1997 that he was contemplating bringing a lawsuit, but he only informed the school that he believed he had "an action for violation of Federal Disabilities law" because VCU had ignored "Mr. Childress [sic] learning disability which directly affects his paper writing skills." Because he failed to notify VCU that he had a claim under the Virginia Act, Plaintiff has failed to meet the 180 day notice requirement specified in the statute. Therefore, Plaintiff's claim under the Virginia Act is barred by that statute's statute of limitations provisions. Furthermore, even if Plaintiff's claim under the Virginia Act was not barred by the statute of limitations, the Court would nonetheless dismiss the claim because Plaintiff does not have sufficient evidence to survive summary judgment, for similar reasons as those given in the discussion of the ADA and Federal Rehabilitation Act claims below.

■ Because neither the Federal Rehabilitation Act nor the ADA specifies a statute of limitations, district courts must adopt the most analogous state statute of limitations for those Acts. *See* 42 U.S.C. § 1988 (1994); *Wilson v. Garcia,* 471 U.S. 261, 266, 268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The Fourth Circuit has held that the Virginia Rights of Persons with Disabilities Act, Va. Code Ann. § 51.5–40 et seq., provides the most analogous statute of limitations for claims brought under the Federal Rehabilitation Act. *See Wolsky v. Medical College of Hampton Roads,* 1 F.3d 222, 223 (4th Cir. 1993), *cert. denied,* 510 U.S. 1073, 114 S.Ct. 881, 127 L.Ed.2d 77 (1994). Although the Fourth Circuit has not yet decided which state statute of limitations is most analogous to claims brought under the ADA, it has provided the following guidance to district courts regarding the proper analysis:

This process involves a two part analysis. In choosing the applicable statute, the court should first select the state statute "most analogous" to the federal claim. The court should then consider whether application of that limitations period is consistent with the federal statute and its underlying policies.

*McCullough v. Branch Banking & Trust Company,* 35 F.3d 127, 129 (4th Cir.1994) (citations omitted), *cert. denied,* 513 U.S. 1151, 115 S.Ct. 1101, 130 L.Ed.2d 1069 (1995).

■ Following this analysis, the Court concludes that the Virginia Act provides the most analogous statute of limitations for claims brought under the ADA as well as the federal Rehabilitation Act. The ADA was closely modeled on the Rehabilitation Act and was intended to extend its protections into the private sector. *See e.g.,* Americans with Disabilities Act of 1989: Sen. Comm. H'gs Before the Committee On Labor and Human Resources, Subcomm. on the Handicapped, 101st Cong., 189 (May 9, 10, 16 and June 22, 1989); S.Rep. No. 101–116, at 156 (1989). Because the two federal statutes are so similar, the the Fourth Circuit's reasoning in *Wolsky* regarding the Rehabilitation Act extends to the ADA. Thus, the Court will apply the Virginia Act's statute of limitations to Plaintiff's claims under both the ADA and the Federal Rehabilitation Act.

■ In using the Virginia Act's statute of limitations to determine the limitations period for the federal statutes, the Court must

also determine whether the Virginia Act's provision that the claimant must commence an action under the statute or notify defendants by mail of the nature of the claim "within 180 days of the occurrence of the alleged violation," Va.Code § 51.5–46(B), is "consistent with the federal statute and its underlying policies." *McCullough,* 35 F.3d at 129. In *McCullough,* the Fourth Circuit held that the 180–day statute of limitations contained within the North Carolina Handicapped Persons Protection Act is consistent with the ADA. *See McCullough,* 35 F.3d at 131. The Court focused on the fact that the ADA has similar requirement that claimants file charge with Equal Employment Opportunity Commission within 180 days of the alleged unlawful employment practice and that the failure to do so results in the claim being time-barred in federal court. The Court then extended that conclusion that the 180–day statute of limitations is consistent with the ADA to the Federal Rehabilitation Act because of the similarities between the policies behind the two acts. *See id.* Thus, this Court will apply the Virginia Statute's 180–day notice requirement to both Plaintiff's ADA and Federal Rehabilitation Act claims.

[■] The Court concludes that neither Plaintiff's ADA nor his Rehabilitation Act claims are barred by the applicable statute of limitations. As discussed above, the limitations period began to run on July 10, 1997 when President Trani notified Plaintiff of his decision to accept the recommendation of the Appeal Board and expel him. Plaintiff promptly notified Defendant VCU in writing by letter dated July 16, 1997 that he was contemplating bringing a lawsuit under federal disabilities laws, well within the 180–day notice required by the Virginia Act. Defendant VCU focuses on the fact that the letter was not sent by certified mail, which is required under the Virginia Act's 180–day notice requirement. Neither the parties nor the Court has identified any Virginia cases holding that a state or federal disability claim is barred because of a failure to send the 180–day notice by certified mail. The Court will assume, *arguendo,* that failure to use certified mail does not render Plaintiff's federal disability claims barred under the statute of limitations, because, as discussed below, Plaintiff is not entitled to relief on these claims in any event.

*Constitutionality of the ADA and federal Rehabilitation Act*

Defendants argue that the ADA, specifically 42 U.S.C. § 12202, and the Federal Rehabilitation Act, 29 U.S.C. § 794, are unconstitutional to the extent that they seek to abrogate the states' Eleventh Amendment immunity for ADA and Federal Rehabilitation Act claims and urges the Court to therefore dismiss the Plaintiff's Complaint for lack of jurisdiction. Several district courts have recently held that Congress did not have the power in the ADA and/or the Federal Rehabilitation Act to override the Eleventh Amendment and as a result, the ADA and the Federal Rehabilitation Act are unconstitutional to the extent they expressly abrogate Eleventh Amendment immunity. *See Brown v. North Carolina Division of Motor Vehicles,* 987 F.Supp. 451 (E.D.N.C. 1997); *Nihiser v. Ohio Environmental Protection Agency,* 979 F.Supp. 1168 (S.D.Ohio 1997); *but see Coolbaugh v. State of Louisiana,* 136 F.3d 430 (5th Cir.1998); *Clark v. State of Cal., California Department of Corrections,* 123 F.3d 1267 (9th Cir.1997); *Martin v. Kansas,* 978 F.Supp. 992 (D.Kan.1997).

Pursuant to 28 U.S.C. § 2403(a), the Court has certified to the Attorney General that the defendant in the above-styled matter has called into question the constitutionality of the Americans With Disabilities Act, 42 U.S.C. § 12202, and the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794, to the extent that these Acts purport to abrogate the state's Eleventh Amendment immunity. The Court granted the United States leave to intervene in this matter for the limited purpose of responding to the Defendants' assertions regarding the constitutionality of these Acts, but the United States has informed the Court that it does not wish to intervene in this cause because the constitutional issue is currently pending before the Fourth Circuit.

Because Plaintiff cannot survive summary judgment on his ADA and Federal Rehabilitation Act claims, even assuming those Acts

are constitutional, the Court declines to decide the constitutionality of those Acts.

*Plaintiff's ADA and Federal Rehabilitation Act Claims*

■ The Americans with Disabilities Act ("ADA") makes it unlawful to discriminate in employment against a qualified individual on the basis of a disability. *See* 42 U.S.C. § 12112. The Act defines discrimination as the failure of an employer to make reasonable accommodation to an otherwise qualified individual with a disability unless the employer can show that the accommodation would impose an undue hardship. *See* § 12112(b)(5)(A). The Federal Rehabilitation Act prohibits discrimination against an otherwise qualified individual with a disability solely on the basis of such disability by any program or activity that receives federal funding. *See* 29 U.S.C. § 794. The ADA and the Rehabilitation Act employ the same standards for determining whether unlawful discrimination has occurred. 29 U.S.C. § 794(d); *Myers v. Hose,* 50 F.3d 278 (4th Cir.1995). To establish a violation of either statute, Childress must show that he (1) has a disability, (2) is otherwise qualified for the position, and (3) has experienced some adverse action as a result of his disability. *See Doe v. Univ. of Maryland Medical System Corp.,* 50 F.3d 1261, 1264–65 (4th Cir.1995).

Plaintiff alleges in his Complaint that he suffers from dysgraphia and/or other broad written language disabilities as set forth in the Diagnostic and Statistical Manual of Mental Disorder, 4th Edition ("DSM IV"), which affects and impairs his ability to reproduce or transcribe written language among other things. *See* Compl. at ¶ 31. Plaintiff also states in his Complaint that he has "other learning disabilities which impair his ability to write legibly and to transcribe written passages accurately." *See* Compl. at ¶ 32. Plaintiff's response to Defendants' Motion For Summary Judgment enumerates these "other learning disabilities" as including a number of cognitive deficiencies including auditory processing deficiencies, long term retrieval, and visual matching.

Plaintiff claims that VCU violated his rights under the ADA in the following ways: (1) discriminated against Plaintiff with respect to the terms, conditions, and privileges of enrollment because of Plaintiff's disability; (2) failed to account for Plaintiff's disability when considering and evaluating the allegations that Plaintiff committed plagiarism and cheated; (3) utilized standards or criteria that had the effect of screening out Plaintiff and others similarly situation because of their disability; and (4) failed to reasonably accommodate or make available provisions to Plaintiff which would have allowed Plaintiff to stay in school. *See* Compl. at ¶ 40.

■ The Court will assume, *arguendo,* that Plaintiff has a disability within the meaning of the ADA and Federal Rehabilitation Act and thus is able to meet his burden of proof on the first element of the prima facie case for those statutes. Plaintiff is also able to meet the third element of the prima facie case expulsion from VCU clearly constitutes an adverse action. Thus, the Court will focus on the second element of the prima facie case which requires that Plaintiff have sufficient evidence that he is otherwise qualified for his position as a graduate student at VCU. *See Doe v. Univ. of Maryland Medical System Corp.,* 50 F.3d 1261, 1264–65 (4th Cir.1995).

■ The ADA and Rehabilitation Act's protections only extend to "qualified individuals" with disabilities who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To satisfy this provision, Plaintiff must be "'able to meet all of a program's requirements in spite of his handicap.'" *Tyndall v. National Education Centers,* 31 F.3d 209, 212 (4th Cir.1994) (quoting *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)). Thus, the Court must determine whether Childress can perform the essential functions of his position as a graduate student, and if not, whether any reasonable accommodation by the school would enable him to perform those functions. *See id.*

[11] In determining which job functions are essential, the ADA instructs that "consideration shall be given to the employer's judgment as to what functions of a job are

essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Applying these guidelines to the academic context, the Court concludes that compliance with the VCU Honor Code is clearly an essential function of being a graduate student.

 The ADA and Rehabilitation Act also require an employer or educational institution to decide on a case-by-case basis whether an individual is otherwise qualified for a position. *See* Background, Appendix to 29 C.F.R. Part 1630; *Champ v. Baltimore County,* 884 F.Supp. 991, 996 (D.Md.1995). Defendant VCU has complied with the ADA and Rehabilitation Act's mandates to conduct such an individualized inquiry. Plaintiff concedes that evidence of his impairments were considered by the Honor Committee and quotes in his opposition brief the following comments made by Dr. Strandberg, a member of the Honor Council, to the Appeal Board:

> We considered several possibilities; one, the person is just incorrigible or a kind of academic incompetence that he's unable to understand or comprehend when you say something to him like you cannot do that, that he's simply not in a position to comprehend. That's a valid possibility and we entertained that when he presented evidence that he has auditory processing problems and he is at a sixth year level. . . .

> And the thing that worried us most was the possibility of someone entering that field who when given clear instructions, don't do that, don't submit that paper without proper permission or go to the writing center where instructions and specificity of instructions may be very critical to people's lives, people's futures, and a person who with good intention perhaps does not either understand or heed those instructions, those clear messages which we felt were given, maybe criminal justice is not he appropriate—we did raise that question and that was a question that we discussed

at some length in the context of the penalty.

July 2, 1997 Appeals hearing transcript at 65–66. Thus, the Honor Council considered whether, assuming Plaintiff's violation of the Honor Code was the involuntary result of a disability, he could fulfill the essential functions of the graduate program and the criminal justice profession. The Honor Council concluded that he could not.

 Plaintiff bears the burden of establishing his ability to perform the essential functions of his position with reasonable accommodation. *See Tyndall,* 31 F.3d at 213. Plaintiff has not suggested to the Honor Council or this Court any way that VCU could reasonably accommodate his disability that does not require the university to simply waive its requirements under its Honor Code. The only reasonable accommodation the Court can envision would be assisting Plaintiff with his citation skills. Indeed, in the fall of 1996, Plaintiff was told by two different professors in the Department of Criminal Justice, Dr. Clement and Dr. Pelfrey, that he needed to visit the English Lab for help with his citations. Although Plaintiff disputes this fact in his opposition brief, arguing that he was only told to seek help with his writing, not specifically his citations, his own deposition testimony clearly contradicts this assertion. *See* Childress Dep. at 22, 31–32. Plaintiff states in his deposition that he went once to the Lab, but was unable to receive assistance because it was closed. He admits that he never went back. Thus, VCU's professors tried to suggest ways for Plaintiff to improve his citation skills, and Plaintiff simply failed to follow through. Plaintiff cannot now complain that VCU failed to attempt to assist him with his difficulty with properly citing material. Furthermore, Plaintiff offers no suggested accommodation for his inability to understand what the Honor Council found to be clear instructions that it is impermissible under the Honor Code to submit one paper for credit in more than one course without prior permission. In short, the Honor Council properly concluded that, whether the result of a disability or not, Plaintiff had unacceptably violated the Honor Code in the past and could not, even with accommodation, fulfill the es-

sential function of complying with the Code in the future.

Accordingly, the Court concludes that Plaintiff cannot meet his burden of proof to show that he is otherwise qualified to fill the position of graduate student at VCU. The Honor Council found that Childress was properly warned that plagiarism and submitting one paper for credit in more than one course without prior permission from the professor was a violation of the Honor Code. The Council also found that, despite those warnings, Childress was guilty of plagiarism and cheating in violation of the Honor Code. The Honor Council also properly considered the effect of Plaintiff's alleged disability on his actions. Thus, the well-established Rooker–Feldman doctrine precludes this Court from reviewing the Honor Council and Appeal Board's findings. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The Court concludes that the VCU Honor Council, Appeal Board, and President were fully entitled to expel Plaintiff for violating the VCU Honor Code and that neither state nor federal disabilities laws were violated thereby. Therefore, Defendants' Motion For Summary Judgment will be GRANTED.

### CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment will be GRANTED.

An appropriate Order will issue.

### *FINAL ORDER*

Upon due consideration, for the reasons stated in the Memorandum this day filed, and deeming it just and proper so to do, it is ADJUDGED and ORDERED that the Defendants' Motion For Summary Judgment be, and the same is, hereby GRANTED, and the Defendants stand DISMISSED with their taxable costs. The remaining motions upon which the Court has not ruled are DENIED as MOOT.