**Roger D. HALL, Plaintiff,**

v.

**WAL–MART ASSOCIATES, INC., Defendant.**

**Civil Action No. 1:04cv054–T.**

United States District Court, M.D. Alabama, Northern Division.

Jan. 25, 2005.

Gypsy Morrow Smith, Stokes & Morrow, Marty W. Marler, Attorney at Law, Elba, AL, for Plaintiff.

Michael L. Thompson, Terry Price, Lehr Middlebrooks Price & Vreeland, PC, Birmingham, AL, for Defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Roger Hall, who is mentally retarded, filed this lawsuit against his former employer, defendant Wal–Mart Associates, Inc., under the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101–12213. Hall asserts two claims: (1) that Wal–Mart failed to accommodate his mental retardation when, rather than taking a more lenient disciplinary action, the company terminated him for taking a customer's money; and (2) that Wal–Mart terminated him because he is mentally disabled. Jurisdiction of the court is proper pursuant to 28 U.S.C.A. § 1331 (federal question) and 42 U.S.C.A. § 12117(ADA).

This case is before the court on Wal–Mart's motion for summary judgment. For the reasons that follow, the motion will be granted.

## I. SUMMARY–JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for the motion, the burden shifts to the nonmoving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993). In making a determination, the court must view all the evidence and any factual inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

Hall worked as a overnight stockperson and maintenance worker for Wal–Mart from April 29, 1999, to March 27, 2003. On March 27, he went to Wal–Mart's pharmacy to pick up a prescription before reporting for work. While at the pharmacy counter, Hall and the pharmacy technician

noticed a stack of money, later determined to be $92.00, lying on the checkout counter. Hall took the money and exited the store. Shortly thereafter, the customer who had left the money on the counter returned to claim it.

Later that night, when Hall returned to report for work, Wal–Mart's store manager and the loss prevention supervisor met with him about the money. During the meeting, Hall acknowledged that the money did not belong to him and returned it. However, he now contends that the pharmacy technician repeatedly told him that the money was his and, believing her, he took the money.

Wal–Mart terminated Hall's employment because he had violated the company's policy prohibiting dishonesty. Hall then filed a claim for state unemployment compensation benefits. Initially, his application for unemployment benefits was granted; however, Wal–Mart appealed the agency examiner's determination. At the administrative appeals hearing, Hall argued that he was fired because he is mentally retarded.[1] The administrative review panel reversed the examiner's determination and found instead that Hall was not entitled to benefits because he had been "discharged ... from his work for a dishonest ... act committed in connection with his work." 1975 Ala.Code § 25–4–78(3)(a).[2] Hall appealed the administrative agency's final determination to a state court, which affirmed the agency panel's determination.[3]

## III. DISCUSSION

As stated, Hall asserts two ADA claims: (1) that Wal–Mart failed to accommodate his mental retardation when, rather than taking a more lenient disciplinary action, the company terminated his employment because he took a customer's money; and (2) the company terminated his employment because he is mentally disabled. As to Hall's failure-to-accommodate claim, Wal–Mart argues that, in light of Hall's admitted dishonesty, he was no longer qualified for his job. As to Hall's discriminatory-termination claim, the company argues that: (1) Hall is barred by the issue-preclusion doctrine from relitigating the reason for his termination because that issue has already been fully litigated and decided in a prior state-court proceeding; and (2) Hall's evidence fails to establish a case of disability discrimination.

### A. Reasonable Accommodation

Though not entirely clear from the pleadings, it appears that Hall's first claim is that Wal–Mart violated the ADA when the company failed to accommodate his mental retardation by disciplining him less severely for his admitted dishonesty. Specifically, Hall argues that, when determining the appropriate disciplinary action for his misconduct, the company should have considered the fact that his mental retardation rendered him easily suggestible to committing dishonesty. Wal–Mart responds, as stated, that, as a result of Hall's dishonest act, he was no longer able to perform the essential functions of his job.

■ To establish a failure-to-accommodate claim under the ADA, Hall must show that: (1) he has a disability that was known to Wal–Mart; (2) he was qualified to perform the essential functions of his job, with or without reasonable accommo-

---

1. Defendant's evidentiary submission in support of motion for summary judgment (Doc. No. 26), exhibit 9, transcript of Alabama Department of Industrial Relations appeals hearing, p. 6.

2. *Id.,* exhibit 1, motion for summary judgment in CV 2004–14 in the Circuit Court of Coffee County, exhibit 2 (attached to said motion), p. 1.

3. *Id.,* Coffee County Circuit Court order.

dation; and (3) Wal–Mart refused to reasonably accommodate his disability. *Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1132 (11th Cir.1996).

■ Hall's evidence establishes the first and third elements: the ADA defines disability as either "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;[4] (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2). Hall's evidence indicates that his full-scale IQ is 53, which falls at the low end of the mild mental retardation range.[5] Hall alleges that, due to his mental retardation, his wife often completes paperwork for him, including his job applications.[6] He further offers evidence from several licenced psychiatrists and psychologists documenting his disability.[7] On this record, a jury could reasonably conclude that Hall's mental disability functionally limits one or more of his major life activities. Also, as to the third element, by terminating Hall's employment, Wal–Mart has refused to accommodate him.

■ As to the second element, the ADA protects disabled employees "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C.A. §§ 12111(8); 29 C.F.R. §§ 1630.2(p), 1630.9(a). To determine whether Hall was a qualified individual under the ADA, the court confronts two questions: (1) whether Hall was able to perform the essential functions of his job and (2), if not, whether

he could do so with some reasonable accommodation which Wal–Mart failed to provide.

First, Wal–Mart argues and the court agrees that, by committing a dishonest act, though such dishonesty may have been a result of his suggestibility as a mentally retarded person, Hall ran afoul of the essential functions of his job. In determining which job functions are essential, the ADA instructs courts that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C.A. § 12111(8). Applying these guidelines to the retail and customer service context, the court concludes that compliance with Wal–Mart's written dishonesty policy is an essential function of being a Wal–Mart employee. *See, e.g., Childress v. Clement,* 5 F.Supp.2d 384, 390–391 (E.D.Va.1998) (Merhige, J.) (finding that, for purposes of the ADA, compliance with the university's Honor Code was clearly an essential function of being a graduate student).

Second, Hall has failed to establish his ability to perform the essential functions of his position with reasonable accommodation. Reasonable accommodation is defined as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position

---

4. Major life activities are functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Norman v. Southern Guaranty Ins. Co.,* 191 F.Supp.2d 1321, 1334 (M.D.Ala.2002) (Thompson, J.) (citing 29 C.F.R. § 1630.2(i)).

5. Plaintiff's supplemental opposition to motion for summary judgment (Doc. No. 38),

exhibit A, psychological evaluation of Dr. Ghostly, p. 2.

6. Plaintiff's brief in response to defendant's motion for summary judgment (Doc. No. 30), p. 2.

7. Plaintiff's supplemental opposition to motion for summary judgment (Doc. No. 38).

held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). By distinction, an employer is not required to make modifications or adjustments to the work environment when doing so would require the employer to sustain an "undue hardship." 42 U.S.C.A. § 12111(10)(A). In essence, "an action requiring significant difficulty or expense," is an *un* reasonable accommodation that is not required under the ADA. *Id.; see, e.g., Bercovitch v. Baldwin School,* 133 F.3d 141, 154 (1st Cir.1998) ("if more than reasonable modifications are required of an institution in order to accommodate an individual, then that individual is not qualified for the program").

In this case, Hall's sought-after accommodation—tolerance of his dishonesty—would require Wal–Mart to sustain an undue hardship. This accommodation materially differs in kind from the more common accommodations previously recognized by this court such as "reassignment to vacant positions, job restructuring, part-time or modified work schedules, modification of equipment or devices, and other similar accommodations." *Sumner v. Michelin N. Am.,* 966 F.Supp. 1567 (M.D.Ala.1997) (Thompson, J.) (citing 29 C.F.R. § 1630.2(o)(2)). Other courts have held that lesser disciplinary action for fraud or dishonesty is not a reasonable accommodation required under the ADA. For example, in *Bercovitch v. Baldwin School,* a sixth-grade plaintiff who purportedly suffered from attention-deficit-hyperactivity disorder was indefinitely suspended from the defendants school for repeated episodes of misconduct. 133 F.3d at 146. The student and his parents sought to enjoin the school's disciplinary action in federal court claiming that, under the ADA, the school failed to accommodate reasonably for the student's disability. *Id.* at 146. The district court preliminarily enjoined the student's suspension; on appeal, the First Circuit Court of Appeals vacated the trial court's injunction for the following reasons:

> "The plaintiffs did not meet their burden of demonstrating probability of success on the merits in at least three respects ... First, even assuming that Jason has a disability within the meaning of the ADA, the alterations in the school's normal requirements and standards that were sought by the plaintiffs and imposed by the district court went far beyond the 'reasonable accommodations' required by statute. It was beyond the power of the district court to order a school to suspend its normal codes of conduct in order to tolerate disruptive and disrespectful conduct when that behavior impaired the educational experience of the other students and significantly taxed the resources of the faculty and administration. Second, the district court applied an incorrect standard and plaintiffs did not meet their burden of showing probability of success that Jason was otherwise qualified. Third, plaintiffs did not, on this record, meet their burden of showing probability of success that Jason is disabled within the meaning of the Act."

*Id.* at 151–152.

Similarly, in *Childress v. Clement,* the plaintiff sued under the ADA claiming that the defendant university "failed to account for [his learning] disability when considering and evaluating the allegations that Plaintiff committed plagiarism and cheated." 5 F.Supp.2d at 390. The district court granted the defendants' summary-judgment motion finding that the plaintiff had failed to demonstrate he was otherwise qualified for his position as a graduate student. Specifically, the court

reasoned that the "[p]laintiff has not suggested ... any way that [defendant] could reasonably accommodate his disability that does not require the university to simply waive its requirements under its Honor Code." *Id.* at 391.

Likewise, in *Coaker v. Home Nursing Services,* 1996 WL 316739, at *1 (S.D.Ala. 1996) (Howard, J.), the court granted an employer's summary-judgment motion where the plaintiff, who had falsified work-related documents, suffered an adverse action because of her dishonesty. Finding that the plaintiff lacked qualifications that were necessary for her job, the court reasoned that more lenient disciplinary action was not a required reasonable accommodation for the plaintiff's misconduct because the defendant "had the right to insist that [the plaintiff] meet the standards of conduct required of all other employees regardless of her ... alleged impairment." *Id.,* at *14.

The court here concludes that Wal-Mart's dishonesty policy "is not superfluous to its proper operation; it is a integral aspect of a productive [retail] environment," *Bercovitch,* 133 F.3d at 154; Hall failed with respect to an essential function of his job when he violated the company's dishonesty policy; his argument that Wal-Mart should have departed from its dishonesty policy is an not a reasonable accommodation required under the ADA; and, he has failed to identify some other reasonable accommodation that would make him qualified for an essential function of his job.

### B. Discriminatory Discharge

Hall's second claim is that Wal-Mart terminated him because he is mentally disabled. The ADA forbids employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees." 42 U.S.C.A. § 12112(a). The court will now discuss in turn whether Hall is collaterally estopped from relitigating the reason for his termination and whether Hall's evidence supports an inference of discriminatory termination.

### 1. Collateral Estoppel

■ The court, in general, gives preclusive effect to the judgment of a state court if two conditions are met: "first, that the courts of the state from which the judgment emerged would do so themselves; and second, that the litigants had a full and fair opportunity to litigate their claims and the prior state proceedings otherwise satisfied the applicable requirements of due process." *Shields v. Bellsouth Advertising & Publ'g Co.,* 228 F.3d 1284, 1288 (11th Cir.2000) (internal quotations omitted) (quoting *Gorin v. Osborne,* 756 F.2d 834, 836 (11th Cir.1985)); *see also Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

■ An Alabama court would give preclusive effect to Hall's claim if three elements are met: (1) the issue at stake is identical to one alleged in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that earlier action. *Smith v. Union Bank & Trust Co.,* 653 So.2d 933, 934 (Ala.1995).

Here, collateral estoppel is essentially fatal to Hall's ADA claim because he is precluded from relitigating the reason for his discharge. First, the issue at stake in this case is identical to the issue that was before the state court: the reason for Hall's termination. Second, the underlying issue of whether Hall's mental disability was the reason for his termination was litigated in the state forum. Throughout the state process, Hall argued that he

believed Wal–Mart fired him because he is mentally retarded.[8] *See e.g., Shields,* 228 F.3d at 1286 (finding issue preclusion barred plaintiff's ADA claims where he argued during state administrative proceedings that his employer fired him because of his HIV status rather than because of his misconduct).

As to the second step of the court's issue-preclusion analysis, the court finds that Hall "received ... [a] hearing on his unemployment benefits request which was adversarial in nature and afforded him a sufficient opportunity to pursue his positions." *Shields,* 228 F.3d at 1288. Hall does not now argue that he was "affirmatively prevented from calling or cross-examining witnesses or introducing relevant evidence at the hearing." *Id.* at 1289. After carefully considering the administrative hearing and state court transcripts, it appears to the court that Hall had a full and fair opportunity to litigate in the state forum whether he was fired because of his mental disability. *Brewer v. Dupree,* 2003 WL 23507795, at *7 (M.D.Ala.) (Thompson, J.).

Last, because Hall argued that he believed he was terminated because he is mentally retarded, the state court necessarily had to confront and reject that argument in order to decide that Hall was instead terminated for dishonesty under 1975 Ala.Code § 25–4–78(3)(a).

The application of estoppel to Hall's ADA claim for discriminatory discharge is not improper.

### 2. Merits

However, even if the court concluded that Hall is not collaterally estopped from relitigating the reason for his termination, Wal–Mart is still entitled to summary judgment because his evidence fails to create an inference of discrimination.

■ There are three elements that Hall must demonstrate to establish a case of discriminatory termination under the ADA: (1) he has, or was perceived to have, a disability; (2) with or without reasonable accommodation, he was a qualified for the job; and, (3) he was discriminated against because of his disability. *Carruthers v. BSA Advertising, Inc.,* 357 F.3d 1213, 1215 (11th Cir.2004).

■ The court has already found that Hall does not meet the second requirement. As previously discussed, there is insufficient evidence that, as a dishonest person, Hall was qualified to perform the essential functions of his job as a stockperson when he was terminated. For the following reasons, he fails the third requirement as well.

To determine whether the record supports an inference of discrimination, the court uses the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Hall bears the initial burden of establishing a prima-facie case of disability discrimination by a preponderance of the evidence; Hall must present " 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.' " *Herawi v. State of Alabama Dep't of Forensic Scis.,* 311 F.Supp.2d 1335, 1344 (M.D.Ala.2004) (Thompson, J.) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324,

---

**8.** *Id.,* exhibit 9, transcripts of Nov. 20, 2003 Department of Industrial Relations appeals hearing, p. 6.

358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)).

If Hall successfully establishes a prima-facie case of discrimination, then the burden shifts to Wal–Mart to articulate a legitimate, non-discriminatory reason for terminating him. "This intermediate burden is 'exceedingly light.'" *Holifield*, 115 F.3d at 1564 (quoting *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994)). Once the company satisfies this burden of production, in order to survive summary judgment, Hall must come forward with evidence that would be sufficient to convince a reasonable fact finder that Wal–Mart's articulated, non-discriminatory reason is pretextual and, instead, the real reason that he was fired is because of his mental disability. *Id.*

One way Hall may establish a prima-facie case is to show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse-employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly situated individual outside of his protected class. *Maynard v. Bd. of Regents of Div. of Univs. of Florida Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).[9]

Assuming that Hall's evidence preliminarily creates an inference of discrimination, Wal–Mart has articulated a legitimate, non-discriminatory reason for his termination: Hall was dishonest in violation of the company's employment policy. This reason meets the company's intermediate burden of production. *See, e.g., Williams v. Motorola, Inc.*, 303 F.3d 1284, 1291 (holding plaintiff had failed to establish an ADA claim for discriminatory termination where the employer terminated her for inability to work with others, insubordination and threats of violence). In

response, Hall has failed to rebut the company's legitimate reason for terminating him. Essentially, there is little to no evidence that Hall was terminated for anything but his dishonest act. To be sure, Hall maintains that he did not intend to commit the dishonest act. However, Wal–Mart responds that his intent was immaterial. The company says that it could no longer keep him in its employ after he had taken a substantial amount of money that was clearly not his, and Hall has not shown that this reason is pretextual.

## IV. CONCLUSION

The court does not doubt the sincerity of Hall's assertion that he is mentally disabled and commends him for maintaining an exemplary work record despite his disability. The events that led to his termination, at least to some degree, may very well have resulted from an unfortunate misunderstanding. If placed in Wal–Mart's position, the court cannot say that it would have disciplined Hall in the same manner. That, however, is not the question before the court today. "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a [company's] practices, no matter how high-handed its decisional process, no matter how mistaken the [company's] managers ..., [this court's] inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988)). Because the record does not support a violation of the ADA, summary judgment will be granted in favor of Wal–Mart.

An appropriate judgment will be entered.

---

9. There is no evidence, at all, to support the fourth factor.

DONE, this the 25th day of January, 2005.

## JUDGMENT

In accordance with the memorandum opinion entered today, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) Defendant Wal–Mart Associates, Inc.'s motion for summary judgment (Doc. no. 23) is granted.

(2) Judgment is entered in favor of defendant Wal–Mart Associates, Inc. and against plaintiff Roger Hall, with plaintiff Hall taking nothing by his complaint.

It is further ORDERED that all other outstanding motions are denied.

It is further ORDERED that costs are taxed against plaintiff Hall, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

DONE, this the 25th day of January, 2005.