**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11336

Non-Argument Calendar

_____

ELIAS MAKERE,
FSA, MAAA,

*Plaintiff-Appellant,*

*versus*

ALLSTATE INSURANCE COMPANY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cv-00905-MMH-LLL

_____

Before ROSENBAUM, JILL PRYOR, and ABUDU, Circuit Judges.

PER CURIAM:

Elias Makere, proceeding *pro se*, sued his former employer
Allstate Insurance Company, bringing a variety of state and federal

employment-related claims. In a series of orders, the district court dismissed most of Makere's claims at the pleadings stage and later granted Allstate summary judgment on the remaining ones. Makere appeals. After careful consideration, we affirm.

## I.

In 2013, Allstate hired Makere, a Black man, as an actuarial technician. When Makere was hired, he was admitted into Allstate's actuarial career program with the goal that he would obtain admission as a fellow in the Society of Actuaries. To be credentialed as a fellow, an applicant must pass a series of actuarial exams. Allstate requires employees in its actuarial career program to progress in passing actuarial exams. If an employee fails a single exam three times, his employment may be terminated. When Makere was hired, he had already passed six exams and had four more to go before he was eligible to become a fellow in the Society of Actuaries.

Makere worked at Allstate for a few years. He says that while employed at Allstate, he was harassed and discriminated against because of his race and sex and also subjected to retaliation.

Allstate terminated Makere's employment after he failed an actuarial exam three times. On August 12, 2016, Allstate notified him that he was terminated. He asserts that he was terminated because of his race, color, and gender and in retaliation for engaging in protected conduct.

After his termination, Makere raised discrimination and retaliation claims against Allstate. In June 2017, he filed an

administrative complaint with the Florida Commission on Human Rights ("FCHR"). In April 2019, he filed a second administrative complaint; this time with both the FCHR and the Equal Employment Opportunity Commission ("EEOC"). In this section, we review the proceedings related to each administrative complaint and then the procedural history of this lawsuit.

## A.

We begin with Makere's 2017 administrative complaint. On June 30, 2017, Makere, proceeding *pro se*, filed a complaint with the FCHR. He alleged that he was subjected to race discrimination and retaliation while working at Allstate and when he was terminated.[1]

After investigating Makere's complaint, the FCHR issued a decision on December 15, 2017, finding "no reasonable cause exists to believe that an unlawful practice occurred." Doc. 73-8 at 2.[2] It concluded that Makere "was terminated for failing his exam" and stated that the "investigation did not reveal evidence of discrimination." *Id.* It also found that the investigation did not establish that Makere had reported any discriminatory harassment to Allstate.

Makere sought further review of this decision. In January 2018, he filed a petition with Florida's Division of Administrative Hearings ("DOAH"), seeking review of the FCHR's decision and asserting that he had been subjected to race and sex

---

[1] In the first administrative complaint, Makere did not make any allegations based on incidents that occurred after his termination.

[2] "Doc." numbers refer to the district court's docket entries.

discrimination as well as retaliation. An administrative law judge ("ALJ") held a four-day evidentiary hearing. At the hearing, sixteen witnesses, including Makere, testified. Both Makere and Allstate submitted exhibits to the ALJ.

After the hearing, the ALJ issued a detailed order setting forth his findings of fact and conclusions of law. He determined that to the extent Makere's claims relied on acts that occurred before June 30, 2016, they were time barred because such acts occurred more than 365 days before Makere filed his administrative complaint. The ALJ further concluded that all of Makere's discrimination and retaliation claims failed on the merits. The ALJ recommended that the FCHR issue a final order concluding that Allstate did not commit any unlawful employment practice and dismissing Makere's petition.

Makere filed exceptions to the ALJ's recommendations. The FCHR entered a final order that adopted the ALJ's findings of fact and conclusions of law, rejected Makere's exceptions, and dismissed with prejudice his 2017 administrative complaint and 2018 petition for relief.

Makere sought judicial review of the agency's final decision by appealing to Florida's First District Court of Appeal. He argued that the FCHR had violated his due process rights. The appellate court rejected this argument and affirmed the agency's decision. It concluded that Makere "fail[ed] to show that the agency's action depended on any finding of fact not supported by competent, substantial evidence in the record" or "to demonstrate that the fairness

24-11336                Opinion of the Court                5

of the proceedings may have been impaired by any material error in procedure." *Makere v. Allstate Ins. Co.*, 301 So. 3d 443, 443 (Fla. Dist. Ct. App. 2020).

On April 10, 2019, Makere filed a second administrative complaint. This time he alleged that he was subjected to race discrimination, sex discrimination, and retaliation while working at Allstate and after he was terminated. He filed this complaint with both the FCHR and the EEOC. In October 2019, the FCHR issued a decision finding "no reasonable cause exists to believe that an unlawful practice occurred." Doc. 4-7 at 2. The decision explained that the "facts and claims" asserted in Makere's second administrative complaint were "identical" to those in his first and that those claims already had been dismissed. *Id.* The decision also stated that Makere's claims in the second administrative complaint were based on events that took place in 2016 and thus the claims were untimely.[3]

Makere then filed a petition with the DOAH. The ALJ concluded that under "doctrines of res judicata, collateral estoppel, and administrative finality," Makere's second complaint and second petition should be dismissed with prejudice. Doc. 4-10 at 4. The ALJ

---

[3] The FCHR was required to mail a copy of its decision to Makere. When the agency issued its decision in October 2019, it did not mail him the decision. Instead, it sent the decision to an attorney who had represented Makere in some of the proceedings related to the first charge but was not representing him for the second charge. In June 2020, the FCHR reissued its decision and sent a copy directly to Makere.

relinquished jurisdiction to the FCHR for entry of a final order dismissing the petition.

On January 23, 2020, the EEOC issued a decision on Makere's second administrative complaint. It adopted the state agency's findings and closed its file. The EEOC notified Makere that he could file suit against Allstate. It warned that he had to bring any claims under Title VII within 90 days of receipt of the EEOC's decision. And it stated that he had to file any claims under the Equal Pay Act within two years or, in the case of a willful violation, three years, of the alleged underpayment.

**B.**

In August 2020, Makere filed this action in federal court against Allstate. He alleged that he was subjected to race and sex discrimination as well as retaliation while working for Allstate.[4] He also asserted that after his termination, when he filed his first administrative complaint, Allstate retaliated against him in several ways including when: Makere was hit by a car while riding his bicycle in April 2018, one of his former Allstate coworkers contacted the police about him around the same time, and his other former employer substantially reduced his retirement benefits in July 2018.

---

[4] In July 2020, Makere filed two lawsuits in Florida state court against Allstate that were essentially identical to his federal complaint. Allstate removed both state court actions to federal court, where they were consolidated with this lawsuit.

In his original complaint, Makere raised four claims. In Counts One through Three, he brought claims for race discrimination, sex discrimination, and retaliation under the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.11. In Count Four, he brought a claim for race discrimination under 42 U.S.C. § 1981.

Allstate filed a motion to dismiss, which the district court granted. The court dismissed the FCRA claims in Counts One through Three, explaining that based on FCHR's decisions, Makere could not "pursue his FCRA claims in this or any court." Doc. 40 at 15–16.

The district court then addressed Makere's § 1981 race discrimination claim, which he raised in Count Four of the complaint. To the extent that this claim was premised on his termination or acts of discrimination, harassment, or retaliation that occurred during his employment at Allstate, the court concluded that the claim was barred by collateral estoppel. It explained that the parties had already litigated in the administrative proceedings the issues of "whether Makere was subjected to race-based discrimination, harassment or retaliation during his employment with Allstate" and whether "his termination was discriminatory or retaliatory." *Id.* at 22. Even though Makere raised the claims in an administrative proceeding, not in a civil action in court, the district court determined that collateral estoppel applied, noting that he had a full and fair opportunity to litigate these issues in the administrative proceedings and was able to seek judicial review of the administrative decision.

To the extent that Count Four raised a § 1981 claim for retaliation based on the events that occurred *after* Makere's termination, the court concluded that Makere failed to state a claim for relief. It considered the post-termination actions that he had alleged were retaliatory. The court concluded that he failed to state a claim because his allegations "fail[ed] to give rise to a plausible inference that *Allstate* engaged in post-termination retaliation." *Id.* at 33 (emphasis added). Because Makere was proceeding *pro se* and had not previously amended his complaint, the court provided him with an opportunity to file an amended complaint solely as to his post-termination retaliation claim under § 1981.[5]

Makere eventually filed a third amended complaint, in which he brought 14 claims against Allstate.[6] In Counts One through Four, he asserted claims under the FCRA for race discrimination, sex discrimination, color discrimination, and retaliation. In Counts Six and Seven, he brought claims for race discrimination and retaliation under 42 U.S.C. § 1981. In Count Nine, Makere brought a claim under 42 U.S.C. § 1985, alleging that Allstate had conspired with individuals tied to Florida's administrative agencies and others to deny him due process and other constitutional rights.

---

[5] After the district court issued the order, Makere filed objections to it. The district court construed the objections as a motion for reconsideration, which it denied.

[6] After the court entered its order on the motion to dismiss, Makere filed a first amended complaint. A few days later, he filed a second amended complaint. The court later permitted him to file a third amended complaint. In this appeal, we discuss the allegations in the third amended complaint.

24-11336                 Opinion of the Court                 9

In Counts Ten through Thirteen, he brought claims under Title VII for race, sex, and color discrimination as well as retaliation.[7]

Allstate again filed a motion to dismiss. This time, the district court granted the motion in part and denied it in part. The court quickly disposed of Makere's FCRA claims for race discrimination, sex discrimination, and retaliation, which were raised in Counts One, Two, and Four of his third amended complaint. The court explained that it had dismissed these claims with prejudice in its earlier order, and so Makere could not reassert them. The court also dismissed Count Three, in which Makere raised a claim for color discrimination under the FCRA. It concluded that this claim also was barred, stating that Makere could not "circumvent" its earlier dismissal order "merely by repackaging his FCRA race discrimination claim as one premised on 'color.'" Doc. 96 at 13 n.7.

---

[7] Makere raised three other claims in the third amended complaint that we did not mention above. In Count Five, he brought a claim under the Equal Pay Act, which the district court dismissed as time barred. In Count Eight, he brought a claim for intentional discrimination under 42 U.S.C. § 1981a. The district court dismissed this claim because § 1981a sets forth the damages available under Title VII and does not provide an independent cause of action. And in Count Fourteen, Makere asserted that Allstate engaged in a pattern and practice of retaliation in violation of Title VII. Allstate argued in its motion to dismiss that, as an individual, he could not pursue a pattern and practice claim. After Makere failed to respond to this argument, the court dismissed this count.

Even liberally construing Makere's appellate brief, he does not raise on appeal any challenge to the district court's dismissal of Counts Five, Eight, or Fourteen. Accordingly, we discuss these counts no further.

Next, the court considered Makere's § 1981 claims in Counts Six and Seven. As to the race discrimination claim in Count Six, the court stated that it had dismissed this claim with prejudice in its earlier order. The court similarly determined that to the extent Count Seven raised a retaliation claim based on acts that occurred during Makere's employment or when he was terminated, it had already dismissed the claim with prejudice. The court concluded that its earlier dismissal barred Makere from reasserting these claims.

The court construed Count Seven as raising a § 1981 retaliation claim based on acts that occurred *after* Makere's termination. It acknowledged that its earlier order had not dismissed this part of the retaliation claim. The court then considered Makere's allegations that Allstate engaged in retaliation after his termination when he was hit by a car while riding his bike, his former coworker contacted the police about him, and his other former employer reduced his retirement benefits. The court acknowledged Makere's allegation that the driver who hit him, his former coworker, and his former employer were all acting at Allstate's behest.

But the court concluded that Makere failed to come forward with plausible allegations that connected Allstate to any of these incidents. It determined that his allegations about Allstate's involvement were "based on nothing more than unwarranted deductions from innocuous facts, conclusory assertions of wrongdoing, and rank speculation." *Id.* at 28. As to the incident when Makere was hit by a car while riding his bike, the court concluded that his

allegation that Allstate had enlisted the driver to injure or kill him was nothing more than a "bald assertion" based entirely on speculation and did not credit it. *Id.* at 22. As to the actions of the former coworker, the court concluded that Makere had not come forward with allegations that gave "rise to the inference that [the coworker] acted at Allstate's behest." *Id.* at 25. Similarly, the court treated his allegation that Allstate had induced his former employer to reduce his retirement benefits as "entirely speculative." *Id.* at 23–24. Because there was no plausible allegation connecting Allstate to these incidents, the court concluded that Makere failed to state a claim for retaliation against Allstate.

The court then considered Makere's § 1985 claim in Count Nine. It explained that to state a claim under § 1985, Makere had to allege the existence of a conspiracy. The court concluded that he failed to come forward with allegations "to support the existence of an agreement between Allstate and the purported co-conspirators, whoever they may be." *Id.* at 30.

The court then turned to Makere's Title VII claims in Counts Ten through Thirteen for race discrimination, sex discrimination, color discrimination, and retaliation. Allstate argued that these claims were time barred. The court concluded that it could not determine at the pleadings stage that the claims were time barred, but it noted that Allstate could renew its challenge at the

summary judgment stage.[8] The court thus granted the motion to dismiss as to all of Makere's claims except the Title VII claims raised in Counts Ten through Thirteen.

The court then permitted the parties to engage in limited discovery related to the timeliness of Makere's Title VII claims. After the discovery period ended, Allstate moved for summary judgment. The district court granted the motion. It explained that Makere failed to timely file an EEOC charge because he did not file it within 300 days of Allstate's last discriminatory act. Although Makere was notified of his termination in August 2016, he waited until 2019 to file his EEOC charge, which was well after the 300-day period expired.

This is Makere's appeal.

## II.

Several standards of review govern this appeal. "We review the district court's grant of a motion to dismiss for failure to state a claim *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "enough facts to state a claim to relief

---

[8] The court also concluded that to the extent Makere was raising a Title VII retaliation claim in Count Thirteen based on actions that Allstate took after his termination, he failed to state a claim for relief. The court used the same reasoning that it relied on to conclude that he failed to state a retaliation claim under § 1981.

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint's allegations must amount to "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]hen determining whether the complaint crosses the line between possibility and plausibility of entitlement to relief, courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (citation modified); *see Twombly*, 550 U.S. at 556–57 (holding that allegations of wrongdoing were not plausible because the facts alleged were "consistent with [liability], but just as much in line with a wide swath of" lawful conduct).

We review *de novo* a district court's decision to apply collateral estoppel. *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1328 (11th Cir. 2003). But we review any findings of facts supporting this determination for clear error. *Id.*

We review *de novo* a district court's grant of summary judgment. *Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1303 (11th Cir. 2003). "We view the summary judgment record in the light most favorable to the non-moving party, and we draw all reasonable inferences in favor of the non-moving party." *Stanley v. City*

*of Sanford*, 83 F.4th 1333, 1337 (11th Cir. 2023). "Summary judgment is appropriate when a movant shows that there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Signor v. Safeco Ins. Co. of Ill.*, 72 F.4th 1223, 1227 (11th Cir. 2023) (quoting Fed. R. Civ. P. 56(a)).

When a litigant is proceeding *pro se*, we liberally construe his pleadings in the district court and his briefing on appeal. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Despite this liberal construction, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Id*.

## III.

On appeal, Makere raises several challenges to the district court's orders. He argues that the district court erred in dismissing his § 1981 claims, granting summary judgment on his Title VII claims, and dismissing his FCRA claims. We consider each issue in turn.

## A.

We begin with Makere's challenge to the district court's dismissal of his § 1981 claims in Counts Six and Seven. He raises two challenges. First, he says that the district court erred in concluding that collateral estoppel barred his § 1981 discrimination claim as well as his retaliation claim (to the extent that the retaliation claim arose out of actions that occurred before or at the time of his termination). Second, he argues that the district court erred in concluding that, to the extent his § 1981 retaliation claim was based on

actions that occurred after his termination, he failed to state a claim for relief. We reject both challenges.

First, we address the district court's application of collateral estoppel. Collateral estoppel, also called issue preclusion, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Quinn*, 330 F.3d at 1328. It generally "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation modified). Collateral estoppel "protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* (citation modified).

A federal court gives preclusive effect to a state court decision upholding an administrative body's findings when (1) "the courts of that state would be bound by the decision," and (2) "the state proceedings that produced the decision comported with the requirements of due process." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). For collateral estoppel to apply, Florida requires that an identical issue be fully litigated by the same parties or their privies and that a final decision be rendered by a court of competent jurisdiction. *Quinn*, 330 F.3d at 1329.

The district court correctly concluded that collateral estoppel applied here. Under Florida law, the state court decision affirming the agency decision rejecting the claims asserted in the first

administrative complaint is entitled to preclusive effect. As an initial matter, this lawsuit and the state proceedings involved identical parties: Makere and Allstate. In addition, the § 1981 claims raise identical issues to those litigated in the first administrative proceedings.[9] Those issues include whether Allstate discriminated against Makere based on race or sex, including by subjecting him to harassment, or retaliated against him during his employment or when he was terminated. It is true that, in the state proceedings, Makere raised these claims under the FCRA, while Counts Six and Seven assert claims that arise under § 1981. But the elements of FCRA and § 1981 claims are the same. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010); *Rice-Lamar v City of Ft. Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000). We therefore treat the claims as identical for collateral estoppel purposes. *See In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993).

In addition, these issues were fully litigated in the state proceedings. After Makere filed his first administrative complaint with the FCHR, the agency investigated his allegations and found no reasonable cause to believe that any unlawful action had occurred. Makere then sought further review of this decision by filing a petition with the DOAH and received an evidentiary hearing before the ALJ where both he and Allstate called witnesses and introduced

---

[9] We note that, for purposes of the collateral estoppel analysis, we are considering the § 1981 retaliation claim only to the extent that it arose out of incidents that occurred before Makere's termination or at the time of his termination.

evidence. The ALJ then issued a written order addressing the claims. On top of that, Makere had an opportunity to seek further review of that decision before the FCHR issued a final order. And these proceedings resulted in a final decision by a court of competent jurisdiction when the Florida appellate court affirmed FCHR's decision. *See Maniccia*, 171 F.3d at 1368.

Before giving preclusive effect to the Florida decision, we also must consider whether the state proceedings satisfied the requirements of due process. Although Makere asserts that he was denied due process,[10] we conclude that the requirements of due process were satisfied. Makere received an administrative hearing that was adversarial in nature before the ALJ, followed by an additional layer of administrative review, and then an opportunity for judicial review. This was enough. *See Shields v. Bellsouth Advert. & Publ'g Co.*, 228 F.3d 1284, 1288–89 (11th Cir. 2000); *see also Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1379 (11th Cir. 2019) (holding that similar administrative procedures satisfied due process when the party had a right to seek judicial review of the administrative decision in a Florida court that had "the power to remedy any procedural deficiencies and cure violations of due process"). We thus conclude that the district court did not err in determining that collateral estoppel barred Makere's § 1981

---

[10] Makere separately sued the ALJ who presided over the administrative proceedings, bringing claims under 42 U.S.C. § 1983. The district court dismissed the lawsuit, concluding that the ALJ was entitled to judicial immunity, and we affirmed. *See Makere v. Early*, No. 22-13613, 2023 WL 7130938 (11th Cir. Oct. 30, 2023) (unpublished).

discrimination claim and his retaliation claim, to the extent that the retaliation claim was based on incidents that occurred before or at the time of his termination.[11]

Second, we consider whether the district court erred when it concluded that Makere failed to state a claim for retaliation based on the incidents that occurred after his termination. Section 1981 prohibits an employer from engaging in retaliation. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008). This protection against retaliation "extends to adverse actions which fall short of ultimate employment decisions." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020) (citation modified). It prohibits retaliation in "employment-related actions" as well as retaliatory actions that are "not directly related to . . . employment" or that cause an employee "harm outside the workplace." *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 63–64 (2006) (emphasis omitted). Retaliatory conduct, whatever its form, by an employer is actionable so long as "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Monaghan*, 955 F.3d at 861 (citation modified).

---

[11] We liberally construe Makere's appellate brief as also arguing that the procedures afforded him were inadequate because he was denied his constitutional right to a jury. The Seventh Amendment protects an individual's right to a civil jury trial. U.S. Const. amend. VII. But it does not apply to proceedings in state court. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 418 (1996). Thus, the fact that Makere did not receive a jury trial in the state court proceedings does not establish a Seventh Amendment violation or a denial of due process.

24-11336                Opinion of the Court                19

Here, Makere alleged in his complaint that Allstate retaliated against him after his termination when (1) the driver of a car hit him while he was riding a bike; (2) his former coworker reported false information about him to police; and (3) his other former employer reduced his retirement benefits. We agree with the district court that Makere failed to state a claim for retaliation. In the third amended complaint, he failed to make plausible allegations connecting Allstate to any of these events. Instead, he simply asserted that Allstate was responsible for this conduct. But this "bare assertion" does not "make his speculation" about Allstate's role in these incidents plausible. *Doe*, 29 F.4th at 688 (citation modified).

Therefore, we conclude that the district court did not err in dismissing Makere's § 1981 claims.[12]

**B.**

We now consider Makere's challenge to the district court's grant of summary judgment on his Title VII claims for discrimination and retaliation that arose out of incidents that occurred during his employment with Allstate or at his termination. Before a plaintiff can bring a Title VII suit, he must "fil[e] a timely charge of discrimination with the EEOC." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). Under Title VII, a charge generally

---

[12] For the same reasons, we conclude that the district court did not err when it ruled that he failed to state a claim under Title VII for retaliation based on these same incidents. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (explaining courts apply same standard to retaliation claims under Title VII and § 1981).

must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). But if the claimant "initially instituted proceedings with a State or local agency with authority to grant or seek relief," the deadline to file a charge with the EEOC is extended to 300 days after the allegedly unlawful employment practice occurred. *Id.*; *see Thomas v. Fla. Power & Light Co.*, 764 F.2d 768, 769–70 (11th Cir. 1985). The applicable period for filing an EEOC charge begins to run when the employee receives unequivocal notice of an adverse employment decision. *See Stewart v. Booker T. Wash. Ins.*, 232 F.3d 844, 849 (11th Cir. 2000).

Here, because Makere initially instituted a proceeding before the FCHR, which had authority to grant relief, he had 300 days from the discriminatory or retaliatory act's occurrence to file an EEOC charge. *See Thomas*, 764 F.2d at 769–70. At the latest, the 300-day period began on August 12, 2016, when Allstate informed Makere that he was terminated. But Makere did not file anything with the EEOC until nearly three years later, in April 2019, which was well after the 300-day period had expired. Makere's Title VII claims are time barred.

Makere argues that we should treat his EEOC charge as timely because it relates back to the first administrative complaint that he filed with the FCHR on June 30, 2017. "Relation back is a legal fiction employed to salvage claims that would otherwise be unjustly barred by a limitations provision." *Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018). In federal district court,

an amendment to a pleading "relates back" to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). But an amended pleading relates back only when the original pleading itself was timely filed. *See Bryant v. U.S. Dep't of Agric.*, 967 F.2d 501, 504–05 (11th Cir. 1992).

Even assuming that Makere's charge of discrimination filed with the EEOC, a federal agency, could relate back to an earlier charge of discrimination he filed with the FCHR, a state agency, his Title VII claims still would be untimely. This is because he did not file his first administrative complaint with the FCHR until June 30, 2017, which was more than 300 days after his termination on August 12, 2016.

We liberally construe Makere's appellate brief as also arguing that he timely filed his EEOC charge under the continuing violation doctrine because he filed it within 300 days of a retaliatory action that occurred after he was terminated.

Under the continuing violation doctrine, a plaintiff may "sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Doe ex rel. Doe #6 v. Swearingen*, 51 F.4th 1295, 1305 (11th Cir. 2022) (citation modified). "For claims based on the cumulative effect of individual acts, . . . the limitations period runs from [the] date of the last act composing the claim." *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 993 (11th Cir. 2025) (citation modified). We have distinguished a continuing

violation "from a series of repeated violations that result in related harms," cautioning that "[r]epeated similar violations are not the same as a single violation of an ongoing nature." *Doe ex rel. Doe #6*, 51 F.4th at 1306. When a plaintiff alleges that the defendant took "separate and discrete acts that repeatedly violate[d] the law, the continuing violation doctrine does not apply." *Id*. Instead, each discrete action "is a separate actionable unlawful employment practice that starts a new clock for filing charges" with the EEOC. *Jimenez*, 146 F.4th at 992 (citation modified). "Discrete discriminatory" or retaliatory acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id*. (citation modified).

The continuing violation doctrine does not help Makere here. In this lawsuit, he brought Title VII discrimination and retaliation claims challenging his termination, but his termination qualifies as a separate and discrete act, meaning he cannot rely on the continuing violation doctrine. *See id*. Because he failed to file a charge with the EEOC within 300 days of his termination, any Title VII claim arising out of his termination is barred. He also brought Title VII discrimination and retaliation claims arising out of the hostile work environment that he faced on an ongoing basis while working at Allstate. He is correct that these claims depended upon proof of repeated conduct extending over a period of time. But the last act that composed these claims occurred no later than the date when he was terminated. Because Makere failed to file a charge with the EEOC raising a harassment claim within 300 days of his termination, these claims, too, are barred. As a result, even

assuming that Makere filed his EEOC charge within 300 days of one of the incidents that allegedly occurred *after* his termination, he cannot rely on the continuing violation doctrine to establish that he timely filed a charge with the EEOC for his Title VII claims arising out of acts or incidents that occurred *before* or at the time of his termination.

We thus conclude that the district court did not err when it granted summary judgment to Allstate.

## C.

We now turn to whether the district court erred when it dismissed Makere's FCRA claims. The FCRA prohibits employers from discriminating on the basis of race, color, or sex or retaliating against employees. Fla. Stat. § 760.10(1)(a), (7). It also "provides for a private right of action" for unlawful employment practices. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1204 (11th Cir. 2007).

The FCRA requires a plaintiff to exhaust his administrative remedies before filing suit. *See id.* at 1205. To exhaust administrative remedies under the FCRA, a claimant must file a complaint with the FCHR within 365 days of the alleged violation. Fla. Stat. § 760.11(1). After the claimant files an administrative complaint, the FCHR investigates his allegations. *Id.* § 760.11(3). The agency must decide within 180 days of the filing date whether there is "reasonable cause to believe that [a] discriminatory practice has occurred" in violation of the FCRA. *Id.* If the FCHR decides that there is reasonable cause to believe a discriminatory practice has

occurred, then the claimant may bring a civil action in court. *Id.* § 760.11(4).

But if the FCHR determines that no reasonable cause exists, it must dismiss the administrative complaint. *Id.* § 760.11(7).[13] And when the FCHR decides there is no reasonable cause, a claimant cannot bring a FCRA claim in court. *See McElrath v. Burley*, 707 So. 2d 836, 840 (Fla. Dist. Ct. App. 1998). Instead, the claimant's only option is to pursue further administrative review (and later judicial review in a state appellate court) of the FCHR's decision. *See* Fla. Stat. § 760.11(7), (13). To be permitted to file a lawsuit, the claimant must succeed in those administrative proceedings. *See Sheridan v. State, Dep't of Health*, 182 So. 3d 787, 792 (Fla. Dist. Ct. App. 2016).

Here, the district court did not err when it dismissed Makere's FCRA claims.[14] He filed his first administrative complaint with

---

[13] If the FCHR fails to decide whether there is reasonable cause within 180 days, the claimant may proceed to file a civil action in court. *See* Fla. Stat. § 760.11(8); *Cisko v. Phx. Med. Prods., Inc.*, 797 So. 2d 11, 12–13 (Fla. Dist. Ct. App. 2001).

[14] For the first time on appeal, Makere argues that, after dismissing his federal claims, the district court should have declined to exercise supplemental jurisdiction over his FCRA claims. But he never asked the district court to decline to exercise supplemental jurisdiction over his state law claims if his federal claims were dismissed. A challenge to a district court's decision to exercise supplemental jurisdiction "may not be raised at any time [like] a jurisdictional defect." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009) (citation modified). Because Makere failed to raise the supplemental jurisdiction issue

the FCHR on June 30, 2017. Within 180 days, the FCHR investigated his claims and determined that there was no reasonable cause to believe that a discriminatory practice had occurred. Makere then sought to challenge this decision in administrative proceedings and before a state appellate court. Because he was unsuccessful in those proceedings, he was barred from bringing FCRA claims in court. *See id.*

Makere doesn't dispute any aspect of this analysis. He nevertheless urges us to reverse the district court because he says it made an error when reciting the facts related to FCHR's review of his second administrative complaint. He asserts that the district court erroneously stated that he filed the complaint on April 26, 2019, when he actually filed it on April 10, 2019. Even assuming that he is correct, the error does not alter our analysis. It does not change that Makere raised his FCRA claims in his initial complaint to the FCHR, the agency made a no reasonable cause determination, and he was unsuccessful when he sought further review of this decision. Regardless of the exact date when he filed a second administrative complaint, he was barred from bringing his FCRA claims in court.

Makere's argument fails for another reason. He did not file his second administrative complaint until April 10, 2019. To the

---

in the district court, he forfeited it. *See Rubinstein v. Yehuda*, 38 F.4th 982, 995 (11th Cir. 2022) (declining to reach issue of whether district court erred in exercising supplemental jurisdiction over state law claim when appellant raised the issue for the first time on appeal).

extent he raised claims in that complaint based on acts that occurred on or before April 10, 2018, the complaint was filed too late. *See* Fla. Stat. § 760.11(1) (requiring administrative complaint to be filed within 365 days of the alleged violation). Even liberally construing Makere's filings, his second administrative complaint alleged only one act that occurred in the 365-day period before he filed it: when Allstate allegedly retaliated against him by causing his other former employer to reduce his retirement benefits. But, as we explained in Section III.A. above, Makere failed to state a claim against Allstate for retaliation based on this act because he failed to plausibly allege that Allstate played any role in the other company's decision to reduce his retirement benefits. We thus conclude that the district court did not err in dismissing his FCRA claims.

## IV.

For the reasons set forth above, we affirm the district court's judgment.[15]

**AFFIRMED.**

---

[15] On appeal, Allstate has filed a motion seeking sanctions against Makere. Although the motion presents a close question, we DENY it.